FILED 24 JAN '12 16:30 USDC-ORP

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 11-cr-00385-HZ |
| v. | SUPERSEDING INDICTMENT |
| RASHAD Q. SANDERS, | 18 U.S.C. § 2423 |
| Defendant. | 18 U.S.C. §§ 1591, 1594(a) |

### THE GRAND JURY CHARGES:

### COUNT 1
### Transportation of a Minor
### 18 U.S.C. § 2423(a)

In September 2008, in the District of Oregon and elsewhere, **RASHAD Q. SANDERS**, defendant herein, did knowingly transport "C.K.", a female under the age of 18, in interstate commerce from the State of Minnesota to the State of Oregon, with the intent that "C.K." engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.

All in violation of Title 18, United States Code, Section 2423(a).

### COUNT 2
### Transportation of a Minor
### 18 U.S.C. § 2423(a)

In September 2008, in the District of Oregon and elsewhere, **RASHAD Q. SANDERS**, defendant herein, did knowingly transport "D.M.", a female under the age of 18, in interstate commerce from the State of Minnesota to the State of Oregon, with the intent that "D.M." engage

**Page 1 - SUPERSEDING INDICTMENT**, *U.S. v. Rashad Q. Sanders*, 11-cr-00385-HZ

in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.

All in violation of Title 18, United States Code, Section 2423(a).

### COUNT 3
### Sex Trafficking of a Minor
### 18 U.S.C. §§ 1591(a) and (b)(2)

In September 2008, in the District of Oregon and elsewhere, **RASHAD Q. SANDERS**, defendant herein, knowingly did the following acts while knowing a female "D.M." had not attained the age of 18 years and would be caused to engage in a commercial sex act:

(a)  Defendant, **RASHAD Q. SANDERS**, did, while in or affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, by any means, a person known as "D.M."; and

(b)  Defendant, **RASHAD Q. SANDERS**, did benefit, financially or by receiving anything of value, from participation in a venture which engaged in the recruiting, enticing, harboring, transporting, providing, or obtaining a person known as "D.M.".

All in violation of Title 18, United States Code, Sections 1591(a) and (b)(2), 1594(a).

### COUNT 4
### Sex Trafficking of a Minor
### 18 U.S.C. §§ 1591, 1594

Beginning about June 2010, and continuing through about May of 2011, in the District of Oregon and elsewhere, **RASHAD Q. SANDERS**, defendant herein, knowingly did the following acts while knowing and in reckless disregard of the fact that a female, "C.C.", had not attained the age of 18 years and would be caused to engage in a commercial sex act:

**Page 2 - SUPERSEDING INDICTMENT**, *U.S. v. Rashad Q. Sanders*, 11-cr-00385-HZ

(a)     Defendant, **RASHAD Q. SANDERS**, did, while in or affecting interstate

commerce, recruit, entice, harbor, transport, provide, obtain, or maintain by any

means and attempt to recruit, entice, harbor, transport, provide, obtain, and

maintain by any means, a person known as "C.C.".; and

(b)     Defendant, **RASHAD Q. SANDERS**, did benefit, financially or by receiving

anything of value, from participation in a venture which engaged in or attempted

to engage in the recruiting, enticing, harboring, transporting, providing, obtaining,

and maintaining by any means a person known as "C.C."

All in violation of Title 18, United States Code, Sections 1591(a), (b)(2), and 1594(a).

DATED this ⎽⎽24⎽⎽ day of January 2012.


A TRUE BILL


OFFICIATING FOREPERSON

Presented by:

S. AMANDA MARSHALL
United States Attorney


KEMP L. STRICKLAND, OSB #96118
Assistant United States Attorney


**Page 3 - SUPERSEDING INDICTMENT**, *U.S. v. Rashad Q. Sanders*, 11-cr-00385-HZ



**U.S. Department of Justice**
*S. Amanda Marshall*
*United States Attorney*
*District of Oregon*
*1000 SW Third Avenue, Ste. 600*                    *(503) 727-1000*
*Portland, OR   97204-2902*                    *Fax: (503) 727-1117*

January 22, 2013

Benjamin Andersen
Attorney At Law
1420 World Trade Center
121 SW Salmon Street
Portland, OR 97204

Re:    *U.S. v. Rashad O. Sanders*, *CR 11-385 (HZ)*
       **Plea Agreement**

Dear Counsel:

Please find the enclosed plea offer that your client must accept in writing and by entering guilty pleas by January 22, 2013. Based on the following agreement, your client agrees to plead guilty to Counts 1, 3, and 4 of the superseding indictment charging violations 18 U.S.C. 2423 and 1591(a), and (b)(2) respectively. He agrees that all three victims were under the age of 18 during the offense and that a conviction for each offense carries a mandatory minimum 10 year prison sentence.

1.    **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any charges other than those specifically mentioned herein.

2.    **Charges**: Defendant agrees to plead guilty to counts 1, 3, and 4 of the superseding indictment charging Transportation and Sex Trafficking of a Minor under Title 18, United States Code, Sections 2423 and 1591(a) and (b)(2). In return, the government agrees to dismiss count 2 against defendant at sentencing.

3.    **Penalties**: The maximum sentence for Title 18, United States Code, Sections 2423 and 1591(a) and (b)(2) are life imprisonment with a mandatory minimum of 10 years imprisonment, a fine of $250,000, a supervised release term of up to life, and a $100 fee assessment. Defendant agrees to pay the fee assessment at the time of guilty plea or explain to the court why it cannot be done.

4.    **Dismissal/No Prosecution**: The USAO further agrees not to bring additional charges against defendant in the District of Oregon arising out of this investigation, known to the USAO at the time of this agreement.

**Revised 02/03/10**

Benjamin Andersen
Re: Rashad Sanders - Plea Letter
Page 2

5.    **Sentencing Factors**:  The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a).  Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

6.    **Acceptance of Responsibility**:  Defendant must demonstrate to the Court that he fully admits and accepts responsibility under U.S.S.G. § 3E1.1 for his unlawful conduct in this case.  If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level. The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in U.S.S.G. § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in U.S.S.G. § 3E1.1.

7.    **Advisory Guideline Calculation**: The parties stipulate to the following advisory guideline calculations for Count 4 of the superseding indictment charging 18 U.S.C. 1591(a)(1), and (b)(2):

| | |
|---|---|
| 2G1.3(a)(2) - Base Offense Level | = 30 |
| 2G1.3(b)(2)(B) – Undue Influence | = +2 |
| 2G1.3(d)(1) & 3D1.4 – Multiple Victims | = +3 |
| 18 U.S.C Section 3553 factors | = - 2 |
| Acceptance | <u>-3</u> |
| | 30 |

The government will seek a 2 level increase under USSG 2G1.3(b)(4) for a Commercial sex act/contact.  If the Court finds that the offense involved a commercial sex act and increases defendant's guideline calculations by 2 levels, then the parties agree to a 2 level downward departure based 3553 factors (acceptance of responsibility above the normal three levels) including: (1) the fact that the victims and other witnesses will not be required to testify at trial; (2) the defendant agrees to give up the right to file pretrial motions; and (3) defendant agrees to restitution as outlined in Paragraph 9 this agreement.  If the Court doesn't find that the offense involved a commercial sex act, then the parties do not agree to a 2 level downward departure based on 3553 factors.  In either event, the parties stipulate to a sentencing range of 188 months to 210 months prison.

The parties believe defendant falls within criminal history category (CHC) V.  If the court were to accept the parties stipulations and no other advisory guideline adjustments apply, the advisory guideline range after acceptance is 188-235 months custody.

8.    **Sentencing Recommendation**:  The parties stipulate and agree to a sentencing range of 188 to 210 months prison.  Defendant agrees he should receive a sentence of no lower than 188 months. The government will recommend a sentence of 210 months prison followed by a 10 year period of supervised release.  Defendant is free to argue for a 5 year period of supervised release.  The USAO

**Revised 02/03/10**

Benjamin Andersen
Re: Rashad Sanders - Plea Letter
Page 3

will make this recommendation so long as defendant demonstrates an acceptance of responsibility as explained above.

9.     **Restitution**: Defendant agrees that the victims are entitled to restitution for any costs to the victim for any physical or mental health treatment or services incurred as a result of the commission of the offense.   In addition, defendant agrees the victim is entitled to restitution for labor and services rendered during the offense pursuant to18 U.S.C. 1593(a) through (c).  Included within the order of restitution, is payment to any  agency who is currently paying or has previously paid the costs of any physical or mental health treatment services for the victim.  Defendant agrees that the restitution figures will be determined by the government at sentencing and that any amount of restitution ordered is immediately payable in full and due at sentencing.

If defendant can not pay the entire remaining restitution balance at the time of sentencing, he agrees to minimum monthly payments to be determined by the court.

10.     **Additional Departures, Adjustments, or Variances**:  The USAO agrees not to seek any upward departures, adjustments, or variances to the advisory sentencing guideline range, or to seek a sentence in excess of that range, except as specified in this agreement.  Defendant agrees not to seek any downward departures, adjustments, or variances to the advisory sentencing guideline range under the sentencing guidelines provisions, or under 18 U.S.C. § 3553, or to seek a sentence below that range, except as specified in this agreement.

11.     **Waiver of Appeal/Post-Conviction Relief**:  Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that:  (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline sentencing range.  Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal.  Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2).

12.     **Court Is Bound**:  The Court is bound by the recommendations of the parties if the Court accepts the plea.  This agreement is made under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and the defendant may withdraw any guilty plea or rescind this plea agreement if the Court rejects the plea or does not follow the agreements or recommendations of the parties.

13.     **Full Disclosure/Reservation of Rights**:  The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case.  Except as set forth in this agreement, the

**Revised 02/03/10**

Benjamin Andersen
Re: Rashad Sanders - Plea Letter
Page 4

parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

14.     **Breach of Plea Agreement**:  If defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

15.     **Memorialization of Agreement**:  No promises, agreements or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court.  If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

Sincerely,

S. AMANDA MARSHALL
United States Attorney

KEMP L. STRICKLAND
Assistant United States Attorney

I have carefully reviewed every part of this agreement with my attorney.  I understand and voluntarily agree to its terms.  I expressly waive my rights to appeal as outlined in this agreement. I wish to plead guilty because, in fact, I am guilty.

1/22/2013
Date

Rashad Q. Sanders - Defendant

I represent the defendant as legal counsel.  I have carefully reviewed every part of this agreement with defendant.  To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

1/22/13
Date

Benjamin Andersen, Attorney for Rashad Sanders

**Revised 02/03/10**

Benjamin T. Andersen
Pacific Northwest Law, LLP
1420 World Trade Center
121 S.W. Salmon Street
Portland, Oregon 97204
t. 503.222.2510 f. 503.546.0664
btandersen@pacificnwlaw.com

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Rashad Q. SANDERS,<br>　　　　　　　　Defendant. | Case No. 3:11-CR-385-HZ<br><br>PETITION TO ENTER PLEA OF GUILTY,<br>CERTIFICATE OF COUNSEL, AND ORDER |

I, Rashad Sanders represent to the court as follows:

1. My name is Rashad Quintel Sanders. I am 28 years old. I have gone to school through ___11ᵗʰ gr.___ .

2. My attorney is Benjamin Andersen.

3. My attorney and I have discussed my case fully. I have received a copy of the Indictment. I have read the Indictment, and I have discussed it with my attorney. My attorney has counseled and advised me concerning the nature of the charges, any lesser-included offenses, and possible defenses that I might have in this case. I have been advised and understand that the elements of the charges alleged against me to which I am pleading "GUILTY" are as follows:

   a. Count One: In September 2008, in the District of Oregon, I knowingly transported "C.K.", a female under the age of 18, in interstate commerce

from the State of Minnesota to the State of Oregon, with the intent that "C.K." engage in prostitution.

    b. Count Three: In September 2008, in the District of Oregon, I knowingly, while in or affecting interstate commerce, transported a person known as "D.M.", who would be caused to engage in a commercial sex act while in reckless disregard of the fact that "D.M." had not attained the age of 18 years.

    c. Count Four: In May of 2011, in the District of Oregon, I knowingly harbored and transported a person known as "C.C." while in reckless disregard of the fact that she had not attained the age of 18 years and would be caused to engage in a commercial sex act, while in or affecting interstate commerce.

4. I know that if I plead "GUILTY," I will have to answer any questions that the judge asks me about the offenses to which I am pleading guilty. I also know that if I answer falsely under oath and in the presence of my attorney, my answers could be used against me in a prosecution for perjury or false statement.

5. I am not under the influence of alcohol or drugs. I am not suffering from any injury, illness or disability that affect my thinking or my ability to reason. I have not taken any drugs or medications within the past seven (7) days, except for those prescribed by a physician.

6. I understand that conviction of a crime can result in consequences in addition to imprisonment. Such consequences could include loss of eligibility to receive federal benefits; loss of certain civil rights (which may be temporary or

permanent depending on applicable state or federal law), such as the right to vote, to hold public office, and to possess a firearm; and loss of the privilege to engage in certain occupations licensed by the state or federal government.

7. I know that I may plead "NOT GUILTY" to any crime charged against me and that I may persist in that plea if it has already been made.  I know that if I plead "NOT GUILTY" the Constitution guarantees me:

    a.  The right to a speedy and public trial by jury, during which I will be presumed to be innocent unless and until I am proven guilty by the government beyond a reasonable doubt and by the unanimous vote of twelve jurors;

    b.  The right to have the assistance of an attorney at all stages of the proceedings;

    c.  The right to use the power and process of the court to compel the production of evidence, including the attendance of witnesses in my favor;

    d.  The right to see, hear, confront, and cross-examine all witnesses called to testify against me;

    e.  The right to decide for myself whether to take the witness stand and testify, and if I decide not to take the witness stand, I understand that no inference of guilt may be drawn from this decision; and

    f.  The right not to be compelled to incriminate myself.

8. I know that if I plead "GUILTY" there will be no trial before either a judge or a jury, and that I will not be able to appeal from the judge's denial of any pretrial

motions I may have filed concerning matters or issues not related to the court's jurisdiction.

9. In this case I am pleading "GUILTY" under Rule 11(c)(1)(C).  My attorney has explained the effect of my plea under the Rule 11(c)(1)(C) procedure to be as follows:

> An attorney for the government and the defendant's attorney may reach a plea agreement.  If the defendant pleads guilty to a charged offense, the plea agreement may (1) specify that an attorney for the government will not bring and/or will move to dismiss other charges and (2) agree that a specific sentencing range is the appropriate disposition of the case and/or that a particular provision of the Sentencing Guidelines, policy statement, or sentencing factor does or does not apply and that such recommendations or requests bind the court once the court accepts the plea agreement.

10. I know the maximum sentence that can be imposed upon me for the crimes to which I am pleading guilty is life imprisonment and a fine of up to $ 250,000.

11. I know that the judge, in addition to any other penalty, will order a special assessment as provided by law in the amount of $100.00 per count of conviction.

12. I know that if I am ordered to pay a fine, and I willfully refuse to pay that fine, I can be returned to court, where the judge can substantially increase the amount of the unpaid balance owed on the fine and I can be imprisoned for up to one year.

13. My attorney has discussed with me the Federal Sentencing Guidelines.  I know that the Guidelines are advisory, not mandatory.  I also know the sentencing judge, in determining the particular sentence to be imposed, must consider those factors set forth in 18 USC § 3553(a) of the United States Code, which include: the nature and circumstances of the offense, my own history and characteristics,

the goals of sentencing (punishment, deterrence, protection and rehabilitation), and the sentencing range established by the advisory Guidelines. If my attorney or any other person has calculated a guideline range for me, I know that this is only a prediction and advisory and that it is the judge who makes the final decision as to what the guideline range is and what sentence will be imposed within the range under FRCrP 11(C)(1)(c). I also know that a judge may not impose a sentence greater than the maximum sentence referred to in paragraph ten (10) above.

14. I know from discussion with my attorney that, under the Federal Sentencing Guidelines if I am sentenced to prison I am not entitled to parole. I will have to serve the full sentence imposed except for any credit for good behavior that I earn. I can earn credit for good behavior in prison at a rate of up to 54 days for each year of imprisonment served. Credit for good behavior does not apply to a sentence of one year or less.

15. I know that if I am sentenced to prison, the judge will impose a term of supervised release to follow the prison sentence. During my supervised release term, a probation officer will supervise me according to terms and conditions set by the judge. In my case, a term of supervised release can be five to ten years in accordance with FrCrP 11(C)(1)(c). If I violate the conditions of supervised release, I may be sent back to prison for up to five years.

16. My plea of "GUILTY" is based on a Plea Agreement that I have made with the prosecutor. That Plea Agreement is attached hereto and incorporated herein. I

have read or had read to me the Plea Agreement, and I understand the Plea Agreement.

17. The Plea Agreement contains the only agreement between the United States government and me.  I understand that I cannot rely on any promise or suggestion made to me by a government agent or officer which is not stated in writing in the Plea Agreement, or which is not presented to the judge in my presence in open court at the time of the entry of my plea of guilty.

18. My plea of "GUILTY" is not the result of force, threat, or intimidation.

19. I hereby request that the judge accept my plea of "GUILTY" to Counts 1, 3 and 4 of the Superseding Indictment.

20. I know that the judge must be satisfied that a crime occurred and that I committed that crime before my plea of "GUILTY" can be accepted.  With respect to the charges to which I am pleading guilty, I represent that I did the following acts and that the following facts are true:

   a. Count One: In September 2008, in the District of Oregon, I knowingly paid for a bus ticket for "C.K.", a female under the age of 18, so that she could travel from the State of Minnesota to the State of Oregon, with the intent that "C.K." engage in prostitution.

   b. Count Three: In September 2008, in Portland, Oregon, while ~~in reckless disregard of the fact~~ [KNOWING] that a person known as "D.M." was less than 18 years old, I paid for a bus ticket for "D.M." from the state of Minnesota to the state of Oregon, knowing that she would be caused to engage in a commercial sex act.

*1/22/13*  (handwritten)

   c. Count Four: In May of 2011, in the District of Oregon, I knowingly

harbored and transported a person known as "C.C." while in reckless

disregard of the fact that she had not attained the age of 18 years and

would *attempted to* be caused to engage in a commercial sex act, while in or affecting

interstate commerce.

21. I offer my plea of "GUILTY" freely and voluntarily and of my own accord and with

a full understanding of the allegations set forth in the Indictment, and with a full

understanding of the statements set forth in this Petition and in the Certificate of

my attorney that is attached to this Petition.


   SIGNED by me in the presence of my attorney, after reading or having had read to

me all of the foregoing pages and paragraphs of this Petition, this 22nd day of January,

2013.

                _Rashad Sanders_
                Rashad Quintel Sanders

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:11-CR-385-HZ |
| Plaintiff, | |
| v. | CERTIFICATE OF COUNSEL |
| Rashad Q. SANDERS, | |
| Defendant. | |

The undersigned, as attorney for defendant, hereby certify:

1.      I have fully explained to the defendant the allegations contained in the Indictment in this case, any lesser-included offenses, and the possible defenses that may apply in this case.

2.      I have personally examined the attached Petition To Enter Plea of Guilty And Order Entering Plea, explained all its provisions to the defendant, and discussed fully with the defendant all matters described and referred to in the Petition.

3.      I have explained to the defendant the maximum penalty and other consequences of entering a plea of guilty as described in this Petition, and I have also explained to the defendant the applicable Federal Sentencing Guidelines.

4.      I recommend that the Court accept the defendant's pleas of "GUILTY."

SIGNED by me in the presence of the above-named defendant, and after full discussion with the defendant of the contents of the Petition To Enter Plea of Guilty, and any Plea Agreement, on this 22nd day of January 2013.

_____
Benjamin T. Andersen
Attorney for Defendant

PAGE 8 –      United States v. SANDERS, USDC Oregon Case No. 3:11-CR-385-HZ
PETITION TO ENTER PLEAS OF GUILTY, CERTIFICATE OF COUNSEL, AND ORDER

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:11-CR-385-HZ |
| Plaintiff, | |
| v. | ORDER |
| Rashad Q. SANDERS, | |
| Defendant. | |

I find that the defendant's pleas of GUILTY have been made freely and voluntarily and not out of ignorance, fear, inadvertence, or coercion. I further find the defendant has admitted facts that prove each of the necessary elements of the crimes to which the defendant has pled guilty.

IT IS THEREFORE ORDERED that the defendant's plea of GUILTY be accepted and entered as requested in this Petition and as recommended in the Certificate of defendant's attorney.

DATED this 22nd day of January 2013 in open court.

Marco A. Hernandez
United States District Judge

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF OREGON

3    PORTLAND DIVISION

4    UNITED STATES OF AMERICA,   )

5               Plaintiff,   )   Case No. 3:11-cr-00385-HZ-1

6     vs.   )   January 22, 2013

7    RASHAD Q. SANDERS,   )   Portland, Oregon

8             Defendant.   )

9    _____)

10   **TRANSCRIPT OF PROCEEDINGS**

11   BEFORE THE HONORABLE MARCO A. HERNANDEZ

12   UNITED STATES DISTRICT COURT JUDGE

13

14   **APPEARANCES**

15   FOR THE PLAINTIFF:   Mr. Kemp L. Strickland
                    Assistant United States Attorney
16                       Attorney at Law;

17   FOR THE DEFENDANT:   Mr. Benjamin T. Andersen
18                       Attorney at Law.

19

20

21

22      *     *     *     *     *

23   **KAREN M. EICHHORN, CSR, CRR**
     Certified Shorthand Reporter
24        8710 SW 50th Ave.
     Portland, Oregon 97219
25        503.936.4805

1              P R O C E E D I N G S

2          MR. STRICKLAND:  Good morning, Your Honor.

3          Kemp Strickland here on behalf of the United

4    States.  We're on the record in United States vs. Rashad

5    Sanders.  This is case No. 11-385.  Mr. Sanders is here

6    with Ben Andersen, his attorney.

7          This is the time that the parties have set for

8    a change of plea.  Based on an agreement that the

9    Government has made with the defendant, it is my

10   understanding he'll be changing his pleas of not guilty

11   to guilty with respect to Counts 1, 3 and 4 of the

12   superseding indictment.

13         I've forwarded to the court a letter that I've

14   prepared a couple of days ago but dated today, explaining

15   that this would be an 11(c)(1)(C) plea and the advisory

16   guideline ranges that we anticipate as well as the

17   Government and defendant's respective positions with

18   respect to sentence in this case.

19         Also attached to that letter is a plea

20   agreement that the Government had prepared, signed and

21   delivered to the defendant as well, and that outlines the

22   same sentencing range and guidelines factors, Your Honor.

23         THE COURT:  Thank you.  I don't have my docket

24   record in front of me.  I assume he was already arraigned

25   on the superseding indictment?

1            MR. STRICKLAND:  I believe he was, Your Honor,

2     but I'd have to check.  I have that date as December --

3     February 6, 2012 is what my notes say.

4            THE COURT:  Okay.

5            THE CLERK:  That's correct.

6            THE COURT:  Mr. Sanders.

7            THE DEFENDANT:  Yes.

8            THE COURT:  I am looking at a document that's

9     called a Petition to Enter Plea of Guilty, Certificate of

10    Counsel and Order.

11           I want to start first with the first portion

12    of that, which is the Petition to Enter a Plea of Guilty.

13    It says that you want to change your plea to -- from not

14    guilty to guilty as regards Count 1, Count 3 and Count 4

15    of the superseding indictment.

16           Is that what you wish to do?

17           THE DEFENDANT:  Correct.

18           THE COURT:  Go ahead and swear the defendant,

19    please.

20           THE CLERK:  Please raise your right hand.  Do

21    you solemnly swear that the testimony you'll give in this

22    matter now pending before the court will be the truth,

23    the whole truth, and nothing but the truth?

24           THE DEFENDANT:  Yes.

25           THE CLERK:  Please state your name.

1              THE DEFENDANT:  Rashad Sanders.

2              THE CLERK:  Thank you.

3

4                        EXAMINATION

5    BY THE COURT:

6         Q    Mr. Sanders, the first thing I want to talk to

7    you about is Paragraph No. 4 of the plea petition.  Do

8    you have a copy of the petition in front of you?

9         A    Yes.

10        Q    Paragraph 4, you can follow along if you like,

11   you don't have to, but it says you know that if you plead

12   guilty, you'll have to answer any questions that the

13   judge asks you about the offenses to which you are

14   pleading guilty.

15             You also know that if you answer falsely under

16   oath and in the presence of your attorney, your answers

17   could be used against you in the prosecution for perjury

18   or false statement.

19             And the reason I'm alerting you, first of all,

20   to Paragraph No. 4 is that you have just been put under

21   oath.  Paragraph 4 now applies.  Do you understand that?

22        A    Yes.

23        Q    Okay.  So we're going to kind of go through

24   the plea petition in some detail.  Before I go any

25   further, did you get a chance to read this document for

                              - 20 -

1    yourself, or did your lawyer read it to you?

2        A      Yeah, I read it.

3        Q      And did you read it as well?

4        A      Yeah, I went over it.

5        Q      And then on the last page, it probably doesn't

6    show on your copy but on my copy, I see the line, Rashad

7    Quintel Sanders, and then nice handwriting.  Actually it

8    says "Rashad Sanders."  Is that your signature?

9        A      Yes.

10       Q      And before we go any further, do you have any

11   questions about anything contained in the plea petition?

12       A      No.

13       Q      Then I want to -- then we're going to go

14   through it from the beginning.  You may want to flip back

15   to the front page.  It says that you are 28 years old.

16   You went to school up through the 11th year of school.

17              Is that a correct statement?

18       A      Correct.

19       Q      And the reason we ask that question is we're

20   concerned because some people don't have very much

21   education.  We're concerned whether they can read these

22   documents for themselves.

23              Did you have any trouble reading or

24   understanding anything in the document?

25       A      No.

1       Q     And in Paragraph 3, it says that you and your

2   lawyer discussed your case fully.  Do you feel that

3   that's true?  Did you and your lawyer talk about this

4   fully?

5       A     Yes.

6       Q     It goes on to say that you received a copy of

7   the indictment, that you read the indictment, in this

8   case I probably should say superceding indictment, but

9   we're talking about the superseding indictment, that you

10  read it, and that you discussed it with your lawyer.

11            Is that also true?

12      A     Yes.

13      Q     It says that your lawyer counseled and advised

14  you concerning the nature of the charges, any

15  lesser-included offenses and any possible defenses you

16  might have to the case.  Do you think that that's true?

17  Your lawyer covered all that with you?

18            I'll read it again.  It says my lawyer has

19  counseled and advised me concerning the nature of the

20  charges, any lesser-included offenses, any possible

21  defenses you might have to the case.

22      A     Can you give me one second here?

23      Q     Of course.

24            MR. ANDERSEN:  I think we're ready, Your

25  Honor.

- 22 -

1    BY THE COURT:

2        Q    We can bring it down.  Your lawyer counseled

3    and advised you concerning the nature of the charges.

4            Did he do that?

5        A    Yes.

6        Q    Did he talk to you about any lesser-included

7    offenses?

8        A    Yes.

9        Q    Did he talk to you about any possible defenses

10    you might have in the case?

11        A    Yes.

12        Q    And then it goes on to say that you were

13    advised, and you understand the elements of the charges

14    alleged against you to which you are pleading guilty.

15            Do you feel that that's true?

16        A    Correct.

17        Q    If you look on Paragraph No. 3 under

18    Subparagraph A, it tells you what those elements are.   In

19    Count 1, September 2008, in the District of Oregon, you

20    knowingly transported CK, a female under the age of 18,

21    in interstate commerce from the state of Minnesota to the

22    state of Oregon with the intent that CK engage in

23    prostitution.  That describes what the elements of that

24    charge are.

25            Do you understand that?

1        A        Correct.

2        Q        And your lawyer talked to you about that?

3        A        Yeah.

4        Q        Count 3 in September 2008, in the District of

5    Oregon, you knowingly while in or affecting interstate

6    commerce, transported a person known as DM, who would be

7    cause to engage in a commercial sex act while in reckless

8    disregard of the fact that DM had not attained the age of

9    18 years of age.

10              Did your lawyer describe Count 3, the

11   elements?

12       A        Yes.

13       Q        Count 4, it describes the elements there.  May

14   of 2011, in the District of Oregon, you knowingly

15   harbored and transported a person known as CC while in

16   reckless disregard of the fact that she had not attained

17   the age of 18 years, and with the cause to engage in a

18   commercial sex act while in or affecting interstate

19   commerce.

20              Are you aware of those elements?  Did your

21   lawyer cover those elements as well?

22       A        Yes.

23       Q        Then we're at Paragraph No. 5.  Paragraph 5

24   says you are not under the influence of alcohol or drugs.

25   You are not suffering from any injury, illness or

1    disability that may affect my thinking or my ability to

2    reason.  Do you think that that's true?

3        A    True.

4        Q    And it also says you haven't taken any drugs

5    or medicine in the last seven days except for those

6    prescribed by a physician; is that true?

7        A    Yes.

8        Q    I want to talk about those that may have been

9    prescribed by a physician.  Is there anything -- well,

10   first of all, let me back up.

11            Have you taken any medicines at all in the

12   last seven days?

13       A    Never.

14       Q    I'm sorry?

15       A    Never.

16       Q    Okay.  So you haven't taken anything in the

17   last seven days?

18       A    No.

19       Q    Okay.  Is there anything about you mentally,

20   physically, chemically, anything that might affect your

21   ability to understand what we're doing here today?  Is

22   there anything that inhibits your ability to understand

23   what we're doing, makes it hard for you to understand

24   what we're doing here today?

25       A    No.

1       Q     Okay.  For some people there is.  I'm not

2   suggesting for you that is, but for some people there is.

3            You have to understand that I ask these

4   questions of everybody who is standing right there trying

5   to plead guilty.  Not necessarily trying to suggest that

6   you are or are not inhibited in any way, okay?  It sounds

7   like you were able to read these documents for yourself.

8            Didn't have any trouble understanding them; is

9   that correct?

10      A     Correct.

11      Q     It says that in Paragraph 6, you understand

12  that a conviction of a crime can result in consequences

13  in addition to imprisonment.

14           In your case it says such consequence could

15  include the eligibility to receive federal benefits, the

16  loss of certain civil rights, and then it has some

17  examples just as the right to vote, hold public office or

18  possess a firearm, and the loss of the privilege to

19  engage in certain jobs, which are licensed by the state

20  or federal government.

21           Do you understand that if you are convicted of

22  these crimes, that those consequences, additional

23  consequences are going to attach to you?

24           Do you understand that?

25      A     Yeah.

1    Q    Do you have any questions about that?

2    A    It seems, it seems like it would be normal for

3    that to be.

4    Q    Okay.  I agree with you.  It is pretty –– it

5    applies to everybody convicted of felonies.  They suffer

6    these additional consequences.

7         Paragraph No. 7 talks about those rights that

8    you give up if I accept your guilty plea.  Paragraph 7

9    lists those rights.  These are the rights that were given

10   to you when you first appeared at your arraignment.

11        For example, you have a right to a speedy and

12   public trial where you are presumed innocent until and

13   unless you are proven guilty by the unanimous vote of 12

14   jurors.

15        So if I accept your guilty plea, you

16   understand there's not going to be a trial.  We're not

17   going to have 12 jurors sitting there deciding whether

18   you are guilty or not guilty.  Do you understand that?

19   A    Yeah.

20   Q    All right.  Part of that is you have a right

21   to have a lawyer help you during the trial.  Because

22   there isn't a trial, you are not having a lawyer help you

23   during the trial as well.  Do you understand you give up

24   your right to a lawyer during the trial process?

25   A    Yeah.

1       Q      You also have a right to use the power and

2   process of the court, we call that the subpoena power of

3   the court, to compel the production of evidence,

4   including the attendance of a witness in your favor.

5           So you have a right to use my power to compel

6   the production of documents or witnesses in –– or any

7   other evidence in your favor, but that's something that

8   applies during the trial process.

9           Since you gave up your right to a trial, you

10  give up your right to have subpoenas, for example, or for

11  witnesses to appear or for the production of evidence.

12          Do you understand that you are going to be

13  giving up that right as well?

14      A      Yes.

15      Q      You have a right to confront and cross–examine

16  any witness called against you.  You have a right, as I

17  said, to call witnesses on your own behalf.

18          You have a right to testify at your trial if

19  you want to.  You also have a right not to testify at a

20  trial if you don't want to.  Your decision not to testify

21  cannot be used against you.  In fact, the Government

22  can't comment on the fact that you didn't testify or

23  decided not to testify.

24          The jury would be given an instruction which

25  would say that they are not to consider that decision in

1    determining whether you are guilty or not guilty.  But

2    again, if you plead guilty, and I accept your guilty

3    plea, you will give up that protection as well as all of

4    the other protections that we've been discussing.

5              Do you understand?

6    A    Yes.

7    Q    Do you have any questions about that?

8    A    No.

9    Q    Then we're at Paragraph No. 8.  Paragraph No.

10   8 says you know that if you plead guilty, there will be

11   no trial before either a judge or a jury, and that you

12   will not be able to appeal from a judge's denial of any

13   pretrial motion you may have filed in this case.

14             Do you understand what Paragraph 8 says?

15   A    Correct.

16   Q    And Paragraph 9 says in this case you are

17   pleading guilty under 11(c)(1)(C).  And your lawyer has

18   explained the effects of a plea under 11(c)(1)(C).

19             I always like to think of that last "C," it

20   doesn't stand for this, but it reminds me that this is a

21   contract, and that the parties and the court are agreeing

22   by way of a contract as to what's going to happen in this

23   case.

24             And so it says an attorney for the Government

25   and the defendant's attorney may reach a plea agreement.

1    If the defendant pleads guilty to the charged offense,

2    the plea agreement may specify that an attorney for the

3    Government will not bring and/or will move to dismiss

4    other charges, and agree that a specific sentencing range

5    is an appropriate disposition of the case, and/or that a

6    particular provision of the sentencing guidelines, policy

7    statement or sentencing factor does or does not apply,

8    and such recommendations are requested by the court once

9    the court accepts the plea agreement.

10          So you and the Government have reached an

11   agreement about what the sentence should be in this

12   particular case.  In this case it is a range, as I

13   understand it.  And if I accept your plea, I will agree

14   to sentence you within that range.

15          Under 11(c)(1)(C), if I decide at some point

16   that's not the appropriate sentence, I will allow you to

17   withdraw your guilty plea.  That's what 11(c)(1)(C) says.

18          Do you understand that?

19   A    Yes.

20   Q    Do you have any questions about that?

21   A    No.

22   Q    In Paragraph 10, it says you know that the

23   maximum sentence that can be imposed on you for the

24   crimes to which you are pleading guilty is life

25   imprisonment and a fine of up to $250,000.  That's the

1     maximum I could impose, except we have an 11(C)(1)(C), so

2     it will be significantly less than that.

3            Do you understand that that's the maximum that

4     you may have been facing had this matter not been

5     resolved the way it is going to be resolved?

6     A     Yes.

7     Q     And Paragraph No. 11 says you know that the

8     judge, in addition to any other penalty, will order an

9     assessment in the amount of $100 per count.  There's

10    three counts, $300 that's going to get ordered.

11           Do you understand that?

12    A     Yes.

13    Q     Paragraph 12 says you know that if you are

14    ordered to pay a fine, and you willfully refuse to pay a

15    fine, you can be returned to court where the judge can

16    substantially increase the amount of unpaid balance owed

17    on the fine and you can be imprisoned for up to one year.

18           Do you have any questions about that?

19    A     No.

20    Q     Paragraph 13 says your lawyer talked to you

21    about the Federal Sentencing Guidelines.  You know that

22    the guidelines are advisory and not mandatory.

23           You also know that the sentencing judge in

24    determining the particular sentence to be imposed must

25    consider the factors set forth in 18.3553(a), which

1    includes the nature and circumstances of the offense,

2    your own history and characteristics, the goals of

3    sentencing, and then they are listed there for you,

4    punishment, deterrence, protection, rehabilitation, and

5    the sentencing range established by the guidelines.

6            If your lawyer or any other person has

7    calculated the guideline range for you, you know that it

8    is only a prediction and advisory.  And ultimately, the

9    judge makes the final decision as to what the guideline

10   range is and what sentence will be imposed within the

11   range under the Federal Rules of Civil Procedure

12   11(c)(1)(C).

13           So in this case, while I will take all those

14   things into consideration, since this is an 11(c)(1)(C),

15   I'm still going to be bound within that range to which

16   the parties have agreed.

17           Do you have any questions about that?

18   A     No.

19   Q     In Paragraph No. 14, it says you know that

20   from talking to your lawyer, that under the Federal

21   Sentencing Guidelines, if you're sentenced to prison, you

22   won't be entitled to parole.

23           In other words, you have to serve the full

24   sentence imposed with an exception.  You can earn credits

25   for good behavior up to 54 days a year for each year that

1    you are in prison.

2             Do you have any questions about that?

3        A    No.

4        Q    Is that a "yes" or "no"?

5        A    Yes.

6        Q    What's your answer?  I said, do you have any

7    questions about Paragraph No. 14?

8        A    No.

9        Q    Paragraph No. 15, it says that if you're

10   sentenced to prison, the judge will impose a term of

11   supervised release to follow the prison sentence.  During

12   the supervised release term, you will have a probation

13   officer which will -- who will supervise you according to

14   the terms and conditions set by the judge.

15            In your case the term of supervised release

16   can be five to ten years because that's what you all have

17   agreed to.  And if you violate the terms of supervised

18   release, you can be returned to prison for up to five

19   years.

20            MR. STRICKLAND:  Your Honor, I should point

21   out that the term of supervision for this particular

22   charge, the maximum term is life, though.  I should put

23   that on the record, but our agreement is for five to ten

24   years.

25   BY THE COURT:

1    Q    Okay.  So if it weren't for your agreement,

2    you could be given a lifetime supervised release term.

3    In this case the parties have agreed that it is going to

4    be somewhere between five and ten years, and it is going

5    to be up to me to decide what that term is.

6         Do you understand that?

7    A    Yeah.

8    Q    And then you need to know it is like

9    probation, so I will require you to do certain things as

10   conditions of supervised release.  If you don't do those

11   things, you can be returned to prison, in your case up to

12   five years.

13        Do you understand?

14   A    Yes.

15   Q    Do you have any questions about Paragraph 15?

16   A    No.

17   Q    Let's talk about Paragraph 16.  It says your

18   plea of guilty is based on a plea agreement that you made

19   with the Government.  That plea agreement is attached,

20   incorporated.  You've read it or it was read to you, and

21   you understand the plea agreement; is that correct?

22   A    Yes.

23   Q    I want to look at the plea agreement for a

24   minute.  I haven't seen it yet.

25              (Pause in Proceedings)

1    BY THE COURT:

2         Q    In Paragraph No. 7 of the plea agreement, it

3    says that the parties stipulate to a sentencing range of

4    188 months to 210 months in prison.  Is that your

5    understanding of the agreement, 188 months to 210 months

6    in prison?

7         A    Yes.

8         Q    Okay.  And your lawyer will try to convince me

9    to sentence you at the 188-month range, and you can

10    expect that the Government will try to convince me to

11    sentence you at the 210-month range.

12             Do you understand that?

13        A    Yes.

14        Q    It also looks like the -- your lawyer will be

15   asking for five years of supervised release.  So after

16   prison, five years of that probationary period, and the

17   Government will be asking for more.  I don't know what

18   they are going to be asking for, but if I were you, I'd

19   expect that they would be asking for more.

20             Do you understand that as well?

21        A    Yes.

22             THE COURT:  Is there a number that's attached

23   to restitution at this juncture?

24             MR. STRICKLAND:  There isn't, Your Honor.  I

25   expect the amount to be relatively low, but I don't have

1    it calculated yet.

2                THE COURT:  What does "relatively low" mean?

3                MR. STRICKLAND:  It won't be in the hundreds

4    of thousands.  It would be closer to under 10,000.

5    BY THE COURT:

6        Q    Okay.  Do you understand that there may be a

7    request for restitution, and if it is appropriate, I will

8    order it?  I am required to.  Do you understand that?

9        A    Yes.

10       Q    And you will be -- it will become part of the

11   sentence.  Any questions about that?

12       A    No.

13       Q    I want you to look at the -- do you have a

14   copy of the agreement in front of you?  Look at Paragraph

15   No. 11.  This is an important paragraph.  It is the most

16   important paragraph to me, and it should be important to

17   you as well.

18                It says defendant knowingly and voluntarily

19   waives the right to appeal any aspect of a conviction and

20   sentence upon any grounds, and there's some exceptions.

21                One, the sentence exceeds the statutory

22   maximum.  Well, it is not going to do that because I'm

23   going to sentence you according to the agreement;

24                Two, the court arrives at a guideline range by

25   applying an upward departure.  Again, that's not going to

1    happen in this case;

2          Three, the court exercises its discretion and

3    imposes a sentence which exceeds the guideline range.

4    Again, that's not going to happen in this case.  In

5    particular, because I'm going to sentence you according

6    to your agreement or allow you to withdraw your plea.

7          And then finally, you can appeal whether your

8    lawyer was competent in representing you.  I can tell you

9    the likelihood of you winning an appeal on that basis is

10   very, very slim, not good.

11         So, Mr. Sanders, what I want you to know is

12   that you are going to have to live with the sentence that

13   I impose.  The likelihood of you getting that sentence

14   overturned is almost nonexistent.

15         Do you understand?

16   A     Yes.

17   Q     Do you have any questions about that?

18   A     No.

19   Q     And at the end of this document I see in very

20   nice handwriting -- is that your signature there at the

21   end?

22   A     Yes.

23   Q     Let's go back to the plea petition.  It says

24   in Paragraph 17 that the plea agreement contains the only

25   agreement between the United States Government and you.

1    You cannot rely on any promise or suggestion made to you

2    by the Government, agent or officer which is not stated

3    in writing in the plea agreement, or which is not

4    presented to the judge in the presence -- in your

5    presence in open court at the time of the entry of plea.

6              Is that a true statement?  Do you understand

7    what that says?

8         A    No.

9         Q    So let me go over it with you again.  Other

10   than the plea agreement, has anybody promised you

11   anything, threatened you in anyway, done anything in

12   order to get you to give up the rights we've been talking

13   about and plead guilty?

14        A    No.

15        Q    It says in Paragraph 18, your plea of guilty

16   is not the result of force, threat or intimidation.

17             Is that true?

18        A    No.

19        Q    It is not true?

20        A    Yes.

21        Q    Let me ask the question again.  It says in

22   Paragraph 18, "My plea of guilty is not the result of

23   force, threat or intimidation."

24        A    True.

25        Q    And Paragraph 20, it says you know that a

1    judge must be satisfied that a crime occurred and that I

2    committed it before your plea of guilty can be accepted.

3                With respect to the charges to which you are

4    pleading guilty, you represent that you did the following

5    acts and the following facts are true:  Count 1, in

6    September of 2008, in the District of Oregon, you

7    knowingly paid for a bus ticket for CK, a female under

8    the age of 18, so that she could travel from the state of

9    Minnesota to the state of Oregon with the intent that CK

10   engage in prostitution;

11               Count 3, in September 2008, Portland, Oregon,

12   while in reckless disregard of the fact that a person

13   known as DM, who was less than 18 years old, you paid for

14   a bus ticket for DM from the state of Minnesota to the

15   state of Oregon knowing that she would be caused to

16   engage in a commercial sex act;

17               And then Count 4, in May of 2011, in the

18   District of Oregon, you knowingly harbored and

19   transported a person known as CC, while in reckless

20   disregard of the fact that she had not attained the age

21   of 18 years and would be attempted to be caused to engage

22   in a commercial sex act while in or affecting interstate

23   commerce.

24               Are those statements true, and did you, in

25   fact, do those things?

```
 1        A     Yes.

 2              MR. STRICKLAND:  I should point out one thing

 3    that I noticed just now, not having an opportunity to

 4    review the plea petition in advance until right before

 5    the hearing.

 6              Count 3 alleges "reckless disregard."  The

 7    superceding indictment itself in Count 3 does not allege

 8    "reckless disregard."  It alleges knowingly.  The

 9    Government would have the evidence to prove that there

10    was an awareness and knowledge of the victim's age in

11    that particular count.

12              THE COURT:  So instead of saying, "While in

13    reckless disregard of the fact," it should say "while

14    knowing that a person"?

15              MR. STRICKLAND:  Yes, your Honor.  And that

16    statute changed between 2008 and 2011.  And that's why it

17    is charged that way.

18    BY THE COURT:

19        Q     Mr. Sanders, Count 3, the Government is

20    telling me it should read, in September of 2008, in

21    Portland, Oregon, while knowing that a person known as

22    DM, who was less than 18 years of age, you paid for a bus

23    ticket for DM from the state of Minnesota to the state of

24    Oregon knowing that she would be caused to engage in a

25    commercial sex act.
```

1          With that change, is Count 3 still a true and

2     correct statement?

3          A     Correct.

4               THE COURT:  I will take out the word "reckless

5     disregard of the fact" and add the word "knowing," and

6     then I will initial it.

7               Mr. Sanders, you can go ahead and have a seat

8     right now.  We're going to hear from the Government.

9     They are going to tell us what the elements are of each

10    of these charges and what evidence they would have

11    brought to court had this matter proceeded to trial.  You

12    can go ahead and have a seat.

13              Mr. Strickland.

14              MR. STRICKLAND:  Thank you, Your Honor.

15              The elements for Count 1, 18 United States

16    Code 2423, Transportation of a Minor are, first, that the

17    defendant knowingly transported or caused to be

18    transported a minor, in this case CK, from one state to

19    another; and, second, defendant did so with the intent

20    that the victim engage in prostitution; and, third, that

21    the victim, in this case CK again, was under the age of

22    18 at the time; and, last, that the offense began or

23    continued or was completed within the District of Oregon.

24              The elements for Count 3 and 4, 18 United

25    States Code 1591, Sex Trafficking of a Minor, are, one,

1    that the defendant knowingly recruited, enticed,

2    harbored, transported, provided, obtained, or maintained

3    by any means a person, in this case, DM and CC, or did

4    benefit financially or by receiving anything of value

5    from participation in a venture, which has engaged in the

6    acts I just described;

7            And then, two, defendant did so knowing or in

8    reckless disregard of the fact that the person, here DM

9    and CC, had not attained the age of 18, and will be

10   caused to engage in a commercial sex act; and, three, the

11   defendant's acts were in or affecting interstate

12   commerce.

13           If this case moved forward to a trial on the

14   merits, the Government would present testimonial physical

15   evidence to prove that on the dates alleged in the

16   superseding indictment while in the District of Oregon,

17   the defendant was properly named and before the court,

18   transported or caused to be transported CK, a minor who

19   was 17 years old, from the state of Minnesota to the

20   state of Oregon for the purposes of prostitution;

21           And then further, that on the dates alleged in

22   Counts 3 and 4, the defendant recruited, provided and

23   transported victims known as DM and CC, who were 16 and

24   15 years old respectively, knowing that they would be

25   caused to engage in commercial sex acts and/or did

1    benefit from money in participating in a venture that

2    engaged in the acts just mentioned.

3              So with respect to the particular facts

4    beginning on or about September of 2008, the defendant

5    made contact with the minors who were residing in the

6    state of Minnesota.  These were CK and DM.  They were

7    aged 17 and 16 respectively.  They were working as

8    prostitutes in the state of Minnesota.

9              Defendant contacted them and told them

10   basically that they could earn more money while working

11   in the state of Oregon, and provided bus tickets for them

12   to be paid for -- or at least obtained bus tickets for

13   the minors to travel from Minnesota to Oregon under

14   assumed names.

15             Minors accepted the invitation.  Went to the

16   Greyhound Bus Station and picked up the tickets, got on

17   the bus, came to Oregon, where the defendant met them at

18   the Max station in Portland.

19             There they went from there to a hotel, the

20   Western Hotel in Portland where a room and rooms were

21   obtained.  Soon after that, both victims were put online

22   on Craigslist and began to get customers calling and

23   coming to the hotel room.  I should point out that the

24   defendant helped them get cell phones as well.

25             After they were in the hotels, they began

1    engaging in commercial sex acts with men for money.

2    Defendant was given some of the money.  And eventually

3    there was an argument that ensued where police were

4    called.  The victims reported that they had come from

5    Minnesota and that were there working with defendant for

6    the purposes of prostitution.

7              With respect to Count 4 and CC, the Government

8    would present evidence that the defendant became aware of

9    CC while she was staying in Portland at a person's house

10   named Dwayne Dorsey.  There he talked with her at some

11   point around the dates alleged in the indictment about

12   her working as a prostitute.

13             Eventually bought her lingerie, took photos of

14   her, and bought her a phone where customers began calling

15   and wanting to have sex with her for money.

16             He had taken her to a hotel in Portland called

17   the Palms where he had purchased a room.  And CC was

18   going to be engaging in commercial sex acts when an

19   argument between the defendant and the hotel clerk ensued

20   about the number of persons occupying the room, where the

21   clerk wanted to have him pay an extra $15 for occupying

22   the room for two people.

23             And then that led to the police coming and

24   investigating and talking with CC, who began to tell now

25   that she was engaging in commercial sex acts and working

1     as a prostitute for the defendant, and that led to the

2     defendant's arrest.

3               Later, in jail conversations between defendant

4     and Dwayne Dorsey, there was information and calls where

5     Dorsey had said that, well, I told you she was 16 years

6     old, don't you remember, and so there's information that

7     he had knowledge of her age.

8               The interstate commerce element of both

9     offenses is found because there was cell phones used.  In

10    the case of DM, she crossed state lines.  With CC, she

11    was taken to a hotel where customers who travel in and

12    out of state from foreign countries come.  And also, the

13    use of the cell phones and condoms, which are

14    manufactured out of the state of Oregon and transported

15    to the state of Oregon were also used.

16              So that's what the Government would prove,

17    your Honor, if the case went to trial.

18              THE COURT:  Thank you.

19              Mr. Sanders, we are at Paragraph 21 of your

20    plea petition.  It says that you are offering your plea

21    of guilty freely and voluntarily of your own accord and

22    with the full understanding of the allegations set forth

23    in the indictment, and with a full understanding of the

24    statements set forth in the petition and in the

25    Certificate of your lawyer, which is attached to the

1    petition.  Is that a true and correct statement?

2    　　　　THE DEFENDANT:  Correct.

3    　　　　THE COURT:  And, Mr. Andersen, did you cover

4    those items set forth in the Certificate of Counsel with

5    your client?

6    　　　　MR. ANDERSEN:  I did, Your Honor.

7    　　　　THE COURT:  Is it your opinion that your

8    client was making a knowing and voluntary and intelligent

9    decision to give up his rights and plead guilty?

10    　　　　MR. ANDERSEN:  Yes, it is.

11    　　　　THE COURT:  Mr. Sanders, then to each of these

12    counts, and we'll begin with Count 1, where it says that

13    you knowingly transported CK, a female under the age of

14    18, in interstate commerce from the state of Minnesota to

15    the state of Oregon with the intent that she engage in

16    prostitution that is set forth in the superseding

17    indictment as Transportation of a Minor, how do you

18    plead?

19    　　　　THE DEFENDANT:  Guilty.

20    　　　　THE COURT:  To Count 3, where it says that in

21    September of 2008, in the District of Oregon, you

22    knowingly while in or affecting interstate commerce

23    transported a person known as DM, who would be caused to

24    engage in commercial sex acts, while in reckless

25    disregard of the fact that DM had not attained the age of

1    18 years of age.  And actually it should say "knowing"

2    that she had not attained the age of 18.  That is set

3    forth as Sex Trafficking of a Minor in Count 3.

4              How do you plead?

5              THE DEFENDANT:  Guilty.

6              THE COURT:  And in Count 4, where it says in

7    May of 2011, in the District of Oregon, you knowingly

8    harbored and transported a person known as CC, while in

9    reckless disregard of the fact that she had not attained

10   the age of 18 years of age, and would be cause to engage

11   in a commercial sex act while in or affecting interstate

12   commerce.  How do you plead?

13             THE DEFENDANT:  Guilty.

14             THE COURT:  That one is also called Sex

15   Trafficking of a Minor.  You have pleaded guilty.  I

16   accept your guilty pleas.

17             I find that you've made your pleas freely and

18   voluntarily, not out of ignorance, fear, inadvertence or

19   coercion.  You've admitted facts which prove each of the

20   necessary elements.  The plea of guilty will be entered

21   as prayed for in the petition and recommended in the

22   Certificate of Counsel.

23             So your sentencing date is May 6, 11:00.  I'll

24   see you then.

25             (Proceedings concluded.)

1                              **CERTIFICATE**

2

3                                --o0o--

4

5                    I certify, by signing below, that the

6     foregoing is a correct transcript of the record of

7     proceedings in the above-entitled matter.  A transcript

8     without an original signature is not certified.

9                    This the 28th day of February 2013.

10

11

12          __/s/_____

13               KAREN M. EICHHORN, CSR, CRR

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    IN THE UNITED STATES DISTRICT COURT

3                       FOR THE DISTRICT OF OREGON

4    UNITED STATES OF AMERICA,        )
                                      )
5                Plaintiff,           ) No. 3:11-cr-385-HZ
                                      )
6          vs.                        ) June 3, 2013
                                      )
7    RASHAD SANDERS,                  ) Portland, Oregon
                                      )
8                Defendant.           )
     ------------------------------

9

10

11

12

13

14

15                            **SENTENCING**

16                    TRANSCRIPT OF PROCEEDINGS

17          BEFORE THE HONORABLE MARCO A. HERNANDEZ

18              UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

1                              APPEARANCES

2   FOR THE PLAINTIFF:    Kemp Strickland
                          Assistant United States Attorney
3                         U.S. Attorney's Office
                          1000 S. W. Third Avenue
4                         Suite 600
                          Portland, OR  97204
5
    FOR THE DEFENDANT:    Benjamin T. Andersen
6                         Attorney at Law
                          121 S. W. Salmon Street
7                         1420 World Trade Center
                          Portland, OR  97204
8
    COURT REPORTER:       Nancy M. Walker, CSR, RMR, CRR
9                         United States District Courthouse
                          1000 S. W. Third Avenue, Room 301
10                        Portland, OR  97204
                          (503) 326-8186
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1                   P R O C E E D I N G S
 2           MR. STRICKLAND:  Good afternoon, Judge Hernandez.
 3           THE COURT:  Good afternoon.
 4           MR. STRICKLAND:  Kemp Strickland here on the
 5   record on behalf of the Government.  We're on the record
 6   in United States versus Rashad Sanders.  That's Case
 7   11-CR-385.  Mr. Andersen is here, representing
 8   Mr. Sanders, who is in custody.
 9           This is the time the Court has set for
10   sentencing, Your Honor.  We're ready to proceed.
11           THE COURT:  Mr. Andersen, are you ready to go?
12           MR. ANDERSEN:  I believe so, Your Honor.  There
13   is an issue with the subpoena of Duane Dorsey.  That is
14   the reason why this sentencing was set over.  He's not
15   here.  There are some issues with service and whether or
16   not he got notice of this new court date.
17           What I would propose, Your Honor, is that we
18   leave that situation in your hands.  If you feel the need
19   to hear from Mr. Dorsey at the end of what Mr. Strickland
20   and I present to you, then I would ask the Court, if the
21   Court feels the need, to set this hearing over at that
22   point to get some testimony from Mr. Dorsey.
23           THE COURT:  Mr. Steele, can you make sure that
24   our door is unlocked?
25           MR. ANDERSEN:  Mr. Dorsey's attorney, Andy
```

1  Kohlmetz, is here.

2          I do have some recordings from Mr. Dorsey.  I

3  would like to play a brief snippet of that in the place

4  of Mr. Dorsey's testimony if the Court would allow that.

5          THE COURT:  Oh, sure.

6          MR. ANDERSEN:  I believe that would potentially

7  obviate the need to have Mr. Dorsey here.  Other than

8  that, I believe we're prepared to proceed.

9          There is also the motion I believe the Court set

10  to be heard at the same time, to excise some of the

11  surplusage in the indictment.  But I think, Your Honor,

12  that that's part and parcel with the sentencing issues,

13  and I think that will become clear as we proceed with the

14  sentencing.

15          THE COURT:  Okay.  Mr. Sanders, I need to talk

16  with you for just a minute.

17          Did you have a chance to look through the

18  presentence report?  Have you reviewed it with your

19  lawyer?

20          THE DEFENDANT:  Yeah.  I didn't like this stuff.

21          THE COURT:  I'm not asking you that.  I know you

22  don't agree with a lot of it.  That's not my question.

23  My question is whether you've had an opportunity to see

24  it, review it, and talk it over with your lawyer.

25          THE DEFENDANT:  Yes.

 1          THE COURT:  Okay.  And, believe me, your lawyer

 2  is arguing vigorously that there are a number of areas

 3  that are not correct in here, and we'll get to that.

 4          THE DEFENDANT:  Okay.

 5          THE COURT:  That's not my question right now.

 6          All right.  That's all I needed to know from you

 7  for the time being.  We're going to hear from the

 8  Government, and then we'll hear from your lawyer.

 9          Mr. Strickland.

10          MR. STRICKLAND:  Thank you, Your Honor.

11          THE COURT:  Well, before we do that, we need to

12  kind of work through those issues that are contested in

13  the report itself.  The first one, as I recall, has to do

14  with -- well, let's go back a little bit further.  The

15  first thing we need to deal with is the motion to I guess

16  cut some of the allegations in the superseding indictment

17  as regards Count 4 on the question of whether or not it

18  is surplusage.

19          Is there anything you want to tell me about that?

20          MR. STRICKLAND:  I can, Your Honor.  This rule

21  and the motion, I'm kind of confused by it.  You know,

22  I'm not sure this rule was geared towards a sentencing

23  forum versus a trial-like arena, for one.

24          Two, the issue here is whether, you know, what

25  Mr. Andersen considers to be surplusage is relevant or

 1    material to the charges.  So based on the PSR and the

 2    information in discovery, interviews with the victim, she

 3    would take the trafficking range back from June of 2010,

 4    where she first met Sanders and he groomed her, started

 5    initiating drugs with her later in the fall and

 6    eventually trafficked her in December, is where she puts

 7    it, 2010, and through May 2011, when she was found with

 8    him.  So that's why the date range is that large in the

 9    indictment, the superseding indictment.

10         I think that's really what Mr. Andersen wants

11    reduced in the indictment is the date range.

12         THE COURT:  Yes.

13         MR. STRICKLAND:  And so at trial the victim would

14    testify to those facts that would be relevant to any of

15    the issues in terms of guilt, when the trafficking began.

16    She certainly had that discussion about all her

17    encounters and dealings with Mr. Sanders.

18         So it's relevant and material to the indictment.

19    He's pled guilty to it, and so I just can't -- I think

20    the motion should be denied.  It's moot at this point.

21         THE COURT:  Thank you.

22         So, Mr. Andersen, I read your materials.  I don't

23    think it's surplusage, but I don't think it necessarily

24    establishes the range that the Government says.  And I

25    look at the plea petition.  It's clear from the plea

7

1  petition that your client pleaded to having an encounter

2  with the victim in Count 4 in May.  And so that's what he

3  admitted to.  And while he pleaded to the entire date

4  range, what the Government does and all prosecutors do is

5  they get as broad a range as possible to capture anything

6  that might have occurred during the statute of

7  limitations.  He pleaded to a May event.  So I leave it

8  at that.  But your motion as regards describing it as

9  surplusage is denied.

10        Next, there is some dispute regarding what's in

11  the guidelines and those numbers and findings within the

12  guidelines.  The first place I believe where there is a

13  dispute is as regards -- I think there is an agreement

14  regarding the base offense level.  There is an agreement

15  regarding undue influence over a minor.  There is

16  disagreement regarding as to whether or not this was a

17  commercial -- commission of a commercial sex act.

18        Is there anything you want to tell me about that

19  one?

20        MR. STRICKLAND:  Your Honor, and I've reviewed

21  the presentence report, and the presentence report writer

22  agrees with the Government that a commercial sex act was

23  committed.  I think the thrust of defendant's argument is

24  he disagrees with it.

25        The victim has provided several different

 1    interviews about when she met Mr. Sanders and when he
 2    started to traffic her and how.  And I think the thrust
 3    of her statements have been consistent, although there
 4    are some inconsistencies.  But the thrust has been
 5    generally the same:  He trafficked her amongst his known
 6    friends for a period of time and then would use those
 7    same friends to traffic her on different occasions, and
 8    then it wasn't until later when he began to post her
 9    online with the T and A board.  So that's been pretty
10    consistent.
11         And she talked about -- in the CARES interview,
12    about how, you know, Mr. Sanders had set up all the
13    commercial sex acts with his friends, how she had sex
14    with those men, how they provided her with money, bundles
15    of money that she couldn't count or didn't count, and
16    that she provided that money to Mr. Sanders after the
17    acts had occurred.  So she was very descriptive about not
18    only the sexual acts that occurred, but also about the
19    money that was exchanged during and after those acts.
20         So there is sufficient evidence there, Your
21    Honor, to support the presentence report writer's
22    conclusion that a commercial sex act occurred.
23         THE COURT:  Thank you.
24         Mr. Andersen.
25         MR. ANDERSEN:  Your Honor, I don't think that

1  there is -- I mean, this is all, I believe, tied in
2  together to a timeline of what happened and when.  It's
3  been Mr. Sanders' contention from day 1, when he was
4  talking with the police, that he met CC on about May 1st.
5  He was arrested on May 4th.  Everything that CC says
6  about what happened outside of that we object to.
7            There is no discussion about any commercial sex
8  act that happened in those three days, as far as I know.
9  He was arrested -- Mr. Sanders was arrested at the motel
10 room, and the person who was coming to do what was going
11 to be a commercial sex act hadn't arrived there yet and
12 there was never any commercial sex act completed there.
13           Now, in terms of the consistencies of CC's
14 stories, there's quite a lot I could say about how they
15 are not consistent; and they're not consistent in some
16 pretty important ways, Your Honor.  She said to one
17 officer that she met Mr. Sanders at a party somewhere and
18 that he took her home and that he raped her in July 2010.
19 She says almost immediately to somebody else, she says
20 that Mr. Sanders met her at her foster home and that, you
21 know, nothing happened, there was no rape or anything
22 like that.  She said to somebody else that she met him at
23 Duane's house, who is the person who is under subpoena
24 that we discussed briefly.  So that's one instance.
25           She describes a variety of dates of when they did

1    meet.  Sometimes she says May.  She says nine months ago.

2    She says August.

3         When did she start prostituting?  She says she

4    started prostituting the day she met Mr. Sanders to one

5    officer.  She says to another officer that she had been

6    prostituting for a year.  She said to other officers that

7    she had been prostituting since December 2010.  So that's

8    a huge discrepancy in terms of the time and the place and

9    the circumstances.

10        She made a couple statements to the medical

11   investigators about -- you know, about her recent sexual

12   contacts.  I think she said to one of the medical

13   investigators that she had had sexual contact or sex the

14   morning she was arrested -- or, I'm sorry, Mr. Sanders

15   was arrested, and the day that she got a medical exam.

16   And there was nothing in the medical exam that supports

17   any sort of -- any sort of sex happening any time in the

18   near -- that day.  So that does not support her.

19        She also said to the medical examiners that she

20   had been beat up the night before, and there was no

21   physical evidence of that either.  So everything that she

22   says is either countered by the evidence or there's just

23   nothing to back her evidence up.

24        Furthermore, Your Honor, in terms of the time

25   frame, it is undisputed that she had a separate, wholly

1    different pimp the month before.  And I think I detailed

2    that pretty -- pretty well in the submission that I gave

3    to the Court.  But, Your Honor, we're talking about April

4    2011, and she is going on repeated, multiple -- I don't

5    know what the word is -- unions with a person by the name

6    of Santiago Mendez, who says to the investigators, "I

7    would meet with her on at least a few occasions.  And

8    every time she would be brought over to my house by this

9    guy, Edward Nunez."

10           So that's in April, Your Honor.  So that is, I

11    think, a pretty important piece of evidence that shows

12    that she was not in Mr. Sanders' custody or control or

13    kidnapped.  I mean, she's given a variety of stories, one

14    of which that she was tied up in a house in Vancouver and

15    there was a bunch of other pimps and a bunch of other

16    prostitutes that controlled her.  And then she says in a

17    different scenario that there were no other prostitutes

18    involved.

19           I mean, I'm starting to get ahead of myself a

20    little on this, Your Honor, because it's difficult to pin

21    down which story the Government is saying is the

22    consistent one.

23           So that's our -- the gist of our reaction to

24    whether or not a criminal sex offense happened.

25    Basically there is no evidence to support that.  The

```
 1    statements she has given to the police are very
 2    unreliable, and they're contradicted by the next
 3    statement that she'll give to somebody.
 4              THE COURT:  Thank you.
 5              On the record that is presently before the Court,
 6    while there may be some evidence of a commercial sex act,
 7    I am not convinced that that's what happened in this
 8    particular case.  I'm convinced a commercial sex act was
 9    contemplated, but I'm not convinced it had been completed
10    as regards CC.
11              There are a number of areas of dispute as regards
12    what happened to CC.  And honestly I cannot answer or
13    resolve those disputes based on the record that's
14    presently before me.  And so while I am denying the
15    motion to strike those things, I will not consider them
16    in imposing my sentence.
17              I think that takes care of your other problem as
18    well, Mr. Andersen, as regards the witness you intended
19    to call?
20              MR. ANDERSEN:  I believe so, Your Honor.  If the
21    Court is taking the position -- just so I can clarify the
22    ruling that I understood the Court to just make -- is
23    that you are not relying on any of the statements that CC
24    made that are not supported by the evidence or --
25              THE COURT:  Well, you have paragraphs 21, 22, 24,
```

13

1    et cetera, that you wanted to have stricken.

2              MR. ANDERSEN:  That's right.

3              THE COURT:  I'm not going to strike them, but I'm

4    not going to consider those paragraphs in determining the

5    outcome of this case or the sentence to be imposed.

6              MR. ANDERSEN:  I believe I understand what the

7    Court is saying.

8              THE COURT:  And that's because I can't resolve

9    them.  Since I can't resolve them doesn't mean they

10   should be stricken.  It means I can't resolve those

11   disputes.

12             MR. ANDERSEN:  Well, I think, Your Honor -- I

13   mean, what should be in the PSR is information that is

14   deemed credible.  And if the Court can't make a

15   credibility determination, then it's a preponderance of

16   the evidence standard.  If the Court is 50-50, anyway,

17   then I think they should be excised from the presentence

18   report.

19             THE COURT:  Your motion is denied on that issue,

20   for reasons that I've already described.

21             Is there anything else, Mr. Andersen?

22             MR. ANDERSEN:  In terms of the PSR?

23             THE COURT:  Yes.

24             MR. ANDERSEN:  I think if the Court has made

25   rulings on the issues that I raised in terms of what to

1    take out of the PSR, I don't think there are.

2           Well, hold on a minute.  There is one reference

3    made in the PSR to Mr. Sanders grooming CC.  I think

4    that's an unfair characterization.

5           THE COURT:  That was included in your list, was

6    it not?

7           MR. ANDERSEN:  It was included, yeah.

8           THE COURT:  The other issue that I just forgot

9    about, there was an issue regarding acceptance of

10   responsibility.  And initially the Government had offered

11   a three-level reduction for acceptance of responsibility;

12   and now it's taking the position because Mr. Sanders

13   wanted to withdraw his motion -- I'm sorry, his plea,

14   that there is no longer acceptance of responsibility and

15   he's now entitled to only a two-level reduction for

16   acceptance of responsibility.

17          Am I adequately characterizing the Government's

18   position?

19          MR. STRICKLAND:  Yes, Your Honor.

20          I will point out that at the time the presentence

21   report was -- the final was put out, all parties were in

22   agreement on the two levels, so I didn't address that in

23   the memo.

24          THE COURT:  Let me just check in with the defense

25   for a minute here.

```
 1            Mr. Andersen, it's my understanding at this
 2    juncture that Mr. Sanders is no longer seeking to
 3    withdraw his plea.
 4            MR. ANDERSEN:  Your Honor, he did have the motion
 5    before the Court, and the Court did make a ruling on
 6    that.  I don't think we're trying to reraise that issue
 7    at this point.
 8            THE COURT:  Okay.  So regardless of what position
 9    the -- so let me then check back in with the Government.
10    I think at this juncture, everybody is in agreement it's
11    a minus two, and I don't think I have the authority to
12    change that to a minus three.
13            Let me check in with the Government to see where
14    we are.
15            MR. STRICKLAND:  Yes, Your Honor.  My
16    recommendation is for a two-level reduction.  It is in
17    part because he tried to take his plea back, but also
18    he's arguing against certain relevant conduct here and
19    certain enhancements.
20            So if you look at 3E1.1, application note 3, it
21    basically says for the Court and parties to consider
22    whether or not the defendant has accepted responsibility
23    not only by accepting his guilt, but also with respect to
24    the relevant conduct issues.  And that Section 3E1.1
25    takes you back to the relevant conduct section, 1
```

1    point -- or 1B1.3, which basically says that unless

2    otherwise specified, relevant conduct refers or is

3    related to the base offense level, specific offense

4    characteristics, and cross-references in Chapter 2.

5         So it's the Government's position that not only

6    did he try to withdraw his plea, but he's also arguing

7    against commercial sex acts, he's arguing against a lot

8    of different things that would be relevant conduct in the

9    case, so we oppose a three-level reduction for

10   acceptance.

11        THE COURT:  Thank you.

12        Mr. Andersen.

13        MR. ANDERSEN:  Your Honor, in terms of the

14   Court's power, I do believe the Court could, if it

15   desired, could enforce the contract, which was the plea

16   agreement.

17        As to the motion to withdraw the plea, I don't

18   think that that in itself warrants a lack of a -- or

19   displays a lack of acceptance.  There was never any sort

20   of issue raised with regard to the motion to withdraw the

21   plea about innocence or not innocence or anything of that

22   nature.  As the Court will remember, it was primarily a

23   discovery issue, some issues he had with his

24   representation and the proceeding in general.

25        Now, in terms of an objection --

```
 1              THE COURT:  And we resolved those issues, right?
 2    I mean, we --
 3              MR. ANDERSEN:  I believe that we did, Your Honor,
 4    and the Court made rulings on that.
 5              THE COURT:  One of the issues was that he had not
 6    had an opportunity to actually see all of the discovery,
 7    and we resolved that issue.
 8              MR. ANDERSEN:  Right.
 9              THE COURT:  And we resolved the issue of
10    representation as well, as I recall.
11              MR. ANDERSEN:  I believe that we did, Your Honor.
12              THE COURT:  Okay.
13              MR. ANDERSEN:  And I think my point in raising
14    that in regards to the minus three or minus two is just
15    to show that Mr. Sanders is not -- in moving to withdraw
16    his plea, he was not raising some sort of claim of actual
17    innocence.  And there is some case law -- I don't think I
18    cited it in my material, but basically it says if
19    somebody comes and says, "I'm innocent.  I didn't do any
20    of this stuff," then that obviously manifests a lack of
21    responsibility.  But in this case, that's simply not what
22    Mr. Sanders was doing when he moved to withdraw his plea,
23    so I don't think that in itself is an adequate basis to
24    deny the contract that he entered into.
25              With regard to the second point that
```

 1  Mr. Strickland raised in terms of arguing against

 2  enhancement, that's always been contemplated as part of

 3  the plea deal.  The plea deal itself says that we can

 4  argue about the enhancements, and that is directly tied

 5  into this issue about the commercial sex act enhancement,

 6  the issue that I raised a bit about the timing of what CC

 7  is saying and the veracity of what she's saying.

 8          All that stuff is tied into this issue about

 9  whether or not a commercial sex act enhancement applies.

10  It also has to do with the arguments we would make to the

11  judge in terms of -- to the Court in terms of where

12  Mr. Sanders should fall on the (c)(1)(C) range.

13          So I think that it -- I find that's an odd

14  argument to make, in the sense that in making sentencing

15  arguments we are not accepting responsibility.  I just

16  don't think that's accurate.  So I do think the Court

17  should exercise its ability to enforce that contract.

18          THE COURT:  And under 3E1.1, subparagraph (b), it

19  talks about upon motion of the Government stating that

20  the defendant has assisted authorities in the

21  investigation or prosecution of his own misconduct by

22  timely notifying authorities of his intention to enter a

23  plea of guilty, thereby permitting the Government to

24  avoid preparing for trial and permitting the Government

25  and the Court to allocate resources efficiently, then it

19

```
 1    can decrease the offense level by one additional level.
 2            I think in this case what happened was the
 3    original agreement contemplated an additional one-level
 4    reduction.  Mr. Sanders had at some point decided that he
 5    needed to look at the discovery and I think felt that he
 6    hadn't been given all of the information necessary and
 7    wanted to see some of the discovery for himself, was then
 8    given an opportunity to do that.  And I think that
 9    resolved the withdrawal motion.
10            He also indicated on a number of occasions his
11    dissatisfaction with a number of his lawyers.  I think,
12    Mr. Andersen, you're his third or fourth lawyer.  I don't
13    remember which one.  But I think again, Mr. Andersen,
14    it's my understanding that issue regarding satisfaction
15    with counsel has also been resolved.
16            Am I right about that, by the way?  I just want
17    to check in with you.
18            THE DEFENDANT:  Yes.
19            THE COURT:  So you're now satisfied with
20    Mr. Andersen in representing you?
21            THE DEFENDANT:  Yes.
22            MR. STRICKLAND:  And, Your Honor, I also should
23    point out that the Government did leave the room when
24    some of those discussions occurred, so I didn't have
25    knowledge of things he might have said on the record.
```

1          THE COURT:  Thank you.

2          But I don't think that Mr. Sanders was trying to

3    do anything more than just be satisfied that he had had

4    an opportunity to review all of the information and felt

5    that because of the protective order, he hadn't had an

6    opportunity to see it all.  And I'm not going to hold

7    that against Mr. Sanders.  I will give him the adjustment

8    of three levels for acceptance of responsibility.

9          So I think that puts us at a level -- total

10   offense level of 32 and a criminal history level of 5,

11   which makes the range 188 to 235 months.

12          MR. STRICKLAND:  That's correct, Your Honor.

13          THE COURT:  Mr. Andersen?

14          MR. ANDERSEN:  Well, Your Honor, if you're asking

15   for sort of my final pitch as to why he should fall at

16   the low end of that range, I'm prepared to --

17          THE COURT:  No.  I just to want make sure you

18   don't have any further objections to the calculations.

19          MR. ANDERSEN:  Oh, I'm glad I clarified.  I don't

20   have any further objection.

21          THE COURT:  So you're in agreement that that's

22   what the range is, 188 to 235?

23          MR. ANDERSEN:  Yes.

24          THE COURT:  Okay.  Then I think with that, we've

25   taken care of all the preliminary issues regarding the

1    guideline calculations.  We've taken care of the issue

2    regarding the motion to cut alleged surplusage from

3    Count 4.  I think now we're ready for getting on to

4    argument about what the sentence should be.

5            I'll begin with the Government.

6            MR. STRICKLAND:  Thank you, Your Honor.

7            The issue here -- and, Your Honor, I might just

8    start out with that 188 to 235 range is the range the

9    parties did contemplate in our plea agreement for a

10   stipulated sentence range, anyway.

11           The Government in this case has agreed not to

12   seek a sentence above 210 months, and that is the

13   sentence the Government is seeking in this case.  And I

14   can tell you that with respect to Mr. Sanders -- and I

15   tried to point this out in my sentencing memo -- there

16   are a number of different characteristics about him and

17   his trafficking of women and children that I tried to

18   point out.  Not all of those situations, of course,

19   turned out to be convictions, but it does give us a

20   chronological perspective of the things he's done not

21   only in his life as a young person and his involvement in

22   the criminal justice system, but also I tried to focus in

23   on the women and children that he's been associated with

24   and had at least police contact or been cited for or, in

25   this case, charged and convicted with, of trafficking.

1    And there are several other minors that I pointed out.

2              In addition to his -- the mother of his children,

3    whom he brought into trafficking at a young age -- I

4    think she was 18, though, Ms. Bradford -- she was

5    trafficked up in Washington, in Seattle, with him, and

6    forced to work out on the streets and earn a thousand

7    dollars a day or be in trouble.  And he was actually

8    caught with her.

9              The police officer did something kind of unique

10   there.  After he arrested Ms. Bradford on the street, he

11   called Mr. Sanders and basically said, "Hey, a great date

12   with your person here, but, you know, she left her phone.

13   So you want to come and get it?"  And he did come and get

14   it.  She pointed him out as being her trafficker, and

15   they found evidence of trafficking in that vehicle.

16             There is a long history of their relationship

17   that I tried to point out in our sentencing memo that

18   shows a history of psycho violence with that particular

19   woman, culminating in some arrests and convictions last

20   year with Mr. Sanders, right around the time when he was

21   indicted in this case.

22             And then I went on to describe the other victims

23   that he attempted to traffic.  And these are all, again,

24   very young women.

25             Then we get to our case here, with the two

 1   women -- young women that were trafficked from Minnesota.

 2   Mr. Andersen will make the argument, well, they were

 3   already prostituting, they were already being trafficked

 4   here.

 5          That's kind of the problem here.  Mr. Sanders

 6   would approach women that he knows are particularly

 7   vulnerable because of whatever in their history and

 8   background, had become prostitutes, and will use that to

 9   his advantage somehow and work them to earn money, along

10   with his other dealings, dealing in drugs.

11          And so he has been in a position where he's been

12   able to reach out to minors over a long period of time,

13   different minors, and encourage and try to get them to

14   work as prostitutes for him, and he's done that.  That

15   kind of distinguishes Mr. Sanders, in my opinion, from

16   the other sex trafficking cases that I've done; and I've

17   done many in this district.

18          And Mr. Andersen points out a few things in his

19   argument as to why Mr. Sanders should not receive a

20   middle 210-month sentence.  And I'll just point

21   out -- first, before I get to that, I'll just say that

22   his history on supervision has just been poor.  Whenever

23   he's been involved with the justice system, he's not

24   complied with his conditions.  He's been obstinate in

25   resisting every condition imposed on him, and he's had to

24

1    go and serve time because of that.

2            So the overall picture of Mr. Sanders is that

3    it's unlikely that he's going to at some point follow

4    through and actually complete the supervision.  So he's

5    got a high chance, in my opinion, of recidivism and going

6    back into the life that he's been living pretty much all

7    his life.

8            So when we get to the disparity argument that

9    Mr. Andersen raises -- and he brings up Stanley Spriggs,

10   who received 188, which was the low end, 188 to 235.

11   Stanley Spriggs, about the same age as Mr. Sanders, was

12   in the Eugene area.  He had trafficked a young woman

13   about 17 years old, and her friend came along one time

14   and he talked her into trafficking for one day as well,

15   so we charged and convicted him of two counts of sex

16   trafficking of minors.  His range was in the same range

17   here as Mr. Sanders.  However, he was in a criminal

18   history category 6, so his range went up a little bit

19   because of that.  But Mr. Spriggs did not have any prior

20   dealings or contact with minors that we could find.  I

21   mean, he had been prostituting women in the past that we

22   know, but no minors.

23           And then Mr. Davis was a very violent young --

24   23-year-old, I think -- offender who trafficked a

25   13-year-old child, and he received a 240-month sentence.

 1   That child was trafficked in several different states.

 2   But Mr. Davis was a criminal history 3.  The reason his

 3   sentence was so high was he was convicted of coercion as

 4   opposed to just sex trafficking of a minor, so he started

 5   out with a mandatory sentence of a 15-year sentence,

 6   188 -- or 180, and then received additional time because

 7   of the facts of the case.

 8          Adam Zimmer should not be on Mr. Andersen's list

 9   because he had a criminal history category 1.  He

10   trafficked a minor in Eugene who was, I think, 15 or 16.

11   It was a mandatory minimum 10-year sentence, no

12   enhancements, 120 months.  He's not in the same situation

13   as Mr. Sanders.  He doesn't have the history of

14   trafficking minors.  He doesn't have the history of

15   trafficking anyone.  He's only had a misdemeanor

16   conviction, as far as I know.

17          So that brings us to Mr. Sanders.  Mr. Sanders,

18   in my opinion, because I've worked all these cases, is

19   the person I've seen in the district that I've charged

20   who has more contact with minors than anyone else.  There

21   have been offenders who have brutalized minors, who have

22   hurt them in different ways, but in terms of the number

23   of minors, Mr. Sanders is the one that I havve seen with

24   the most convictions or contact with minors, so that's

25   why I put him in a different class than the other

1  offenders.

2        It's my position that with an offender like that,

3  with his criminal history and history on supervision, a

4  low-end 188-month sentence is not appropriate.  That's

5  why I moved up to the middle range, 210 months, and

6  that's my recommendation, Your Honor.

7        THE COURT:  Thank you.

8        MR. ANDERSEN:  Your Honor, I think from Day 1 the

9  big issue with Mr. Sanders was that -- was the further

10  allegations of CC.  I think he's fully -- and I think

11  he's been ready from the beginning to admit to his

12  conduct in regard to all three of these women except for

13  the enhancing things that CC has brought up.

14        Now, as far as the first two go, I appreciate

15  Mr. Strickland's point about them being involved in

16  prostitution before Mr. Sanders coming on the scene as

17  sort of swinging both ways.  I don't think that those two

18  were particularly vulnerable, any more than anybody in

19  this situation would be vulnerable.  Obviously they got

20  to the position they were in life somehow.

21        But it's pretty clear to me, based on the

22  reports, that they were just as in control, if not more

23  in control of the situation than Mr. Sanders was.  When

24  they wanted to leave, they left.  When they wanted to

25  come back to Mr. Sanders, they came back to get their

```
 1   clothes and then they left again.  There was never any
 2   real violence or anything like that from Mr. Sanders
 3   directed to these two until they came back with these two
 4   other pimps that they had found and sort of had this
 5   situation at the motel room.  And that is detailed a bit
 6   in the sentencing letter, so I don't want to get too far
 7   into that.
 8          The big issue has been CC, and I think that we've
 9   already gone into a bit of the situation surrounding her.
10   Mr. Sanders has been pretty consistent -- well, he's been
11   very consistent in terms of what happened.  And what
12   happened was he met her on about the 1st at Mr. Dorsey's
13   apartment.  He helped her take pictures.  He bought her
14   lingerie.  He helped her post an ad on Craigslist and
15   then took her to the motel room where the planned
16   rendezvous was going to take place.
17          There is no real basis, I don't think, to show
18   that he was ever violent with her, that he was ever
19   coercive any more than -- I think you get the plus two
20   points under the guidelines just because of the nature of
21   the age difference.  That's the only real thing that I
22   can see that's backed up in terms of there ever being any
23   coercion, and there's not really any allegation that he
24   was coercing her.  It's just an age thing.
25          Now, I can get a lot more into the differences in
```

1  the stories from CC, but I think based on the
2  Court's -- or my understanding of the Court's ruling,
3  that you're not going to really rely on any of those
4  statements, I won't get into those if the Court doesn't
5  feel the need to have me speak anymore about that.
6          But I will point out, Your Honor, that in terms
7  of where Mr. Sanders falls on the guidelines and what
8  sort of sentence should be imposed, I think that it is
9  fair to say that it is generally accepted that the low
10 end of the guideline range is an appropriate sentence for
11 somebody who does accept responsibility.  And I think
12 it's been -- although there have been quite a number of
13 issues raised in this case, there has never really been a
14 dispute at least raised with the Court in terms of guilt
15 or innocence if we're not talking about the things that
16 CC says that go above and beyond what happened.  So
17 that's, you know, one of the reasons I would ask the
18 Court to impose a sentence at the low end, of 188.
19         Another thing that I think is important for the
20 Court to understand is that Mr. Sanders, although he has
21 had contacts with the police, he has never been sentenced
22 to a sentence anywhere approaching this nature.  I
23 believe his longest sentence was six months.  So even if
24 the Court were to impose a 188-month sentence, that's 30
25 times any sentence that he's ever received.  I think that

1  is more than sufficient to comply and address the issues
2  raised in 18 USC 3553(a), bearing in mind the Court's
3  duty to impose a sentence that is sufficient, but
4  not -- but not too much.

5           I think that 188-month sentence is -- that will
6  put Mr. Sanders in prison through his fourth decade,
7  through his thirties.  He'll be in his early forties by
8  the time he gets out with a sentence like that.  That, I
9  think, will be a change that anybody just -- that much
10 incarceration, I'm not sure what's going to happen at the
11 end of it all, but in terms of what the Court is
12 determining today, I think that that is more than enough
13 to comply with the requirements of the statute in
14 imposing a sentence.  So I'd ask the Court to impose 188
15 months.

16          There is also the issue about supervised release;
17 and there I have, I guess, a couple reactions to the
18 Government's position and also the presentence report's
19 position that 10 years is better than five years.  Five
20 years, Your Honor, is a pretty significant period of time
21 regardless.  I think that is the period of time that was
22 even imposed on Jefferson Davis, who was one of the three
23 people that I raised in my sentencing memo and that
24 Mr. Strickland addressed.  He was the one who had the
25 13-year-old and was pretty abusive and violent with her.

 1    He still got five months of -- or, I'm sorry, five years

 2    of supervised release.  So I think that five years of

 3    supervised release -- in fact, everybody that I bring up

 4    had five years of supervised release.  I think that's an

 5    adequate time.

 6            I think the argument that Mr. Sanders is not

 7    going to succeed on supervised release, I think that

 8    that -- that that leads towards the imposition of a

 9    smaller period of supervised release.  And I don't

10    know -- I don't really have anything to say either way

11    about his success on supervised release.  I think that

12    once he completes the sentence that this Court imposes, I

13    think he will be a different person.  Hopefully it's for

14    the better.  I think that prison is a difficult spot for

15    anybody, especially for somebody who has not been in

16    prison for a period of more than six months.  So I think

17    that 15 and a half years, 188 months, I think that's

18    sufficient.

19            THE COURT:  Mr. Sanders, is there anything you

20    want to tell me?

21            THE DEFENDANT:  Yes.  Do you want to hear my side

22    of the situation, of the story or whatever?

23            THE COURT:  You get to say whatever you think is

24    important for me to know before I sentence you.

25            THE DEFENDANT:  Okay.  Well, Your Honor, I agree

1    and I disagree with Mr. Strickland's sentencing

2    memorandum, you know, like his first couple of pages

3    about sex trafficking and stuff like that.  But I also

4    believe that it's kind of -- it's just one-sided.  It's

5    kind of like misleading.

6         And I -- I don't feel like those girls in my case

7    are -- I don't think that applied, that these girls in my

8    case, I don't think -- I don't think that -- they weren't

9    victims, you know.  And it's like I felt like Chantelle

10   and Dakota had already committed a federal crime before

11   they came to Portland and they were prostitutes on the

12   website.  And for some reason it wasn't federal for them,

13   but it's federal whenever -- since I got involved.

14        THE COURT:  Do you know why that is?  I'm sorry

15   to interrupt you, but do you know why that is, why it's a

16   federal offense for you to have done what you did?  Do

17   you understand that?  Do you know why the law says what

18   it says and why the punishment is so harsh?  Do you have

19   insight?

20        THE DEFENDANT:  Such as like what?

21        THE COURT:  Are you able to tell me and explain

22   to me why it is that the Government wants you to go to

23   prison for 210 months?  Why is that?

24        THE DEFENDANT:  Well, because I got involved.

25        THE COURT:  Well, involved with what?

1          THE DEFENDANT:  With two girls who were

2    prostitutes.

3          THE COURT:  And?  That doesn't explain why they

4    want 210 months.

5          THE DEFENDANT:  Well, I don't know.

6          THE COURT:  You don't know?  What was special

7    about these particular girls?

8          THE DEFENDANT:  Well, what I'm saying is that it

9    wasn't a federal crime for them to already be on the

10   Internet and traveling, but now it's like a federal crime

11   now that I come in contact with them.

12         THE COURT:  Why is that?  Why is the law like

13   that?  Do you know?

14         THE DEFENDANT:  I agree with it, and then I

15   disagree with it.

16         THE COURT:  I didn't ask you that.  I said why?

17   Why is the law like that?  Why is the law so harsh?  It's

18   a harsh sentence, regardless of whether it's 15 years and

19   eight months or 210 months.  Any way you look at it,

20   those are extremely big numbers.

21         THE DEFENDANT:  Yes.

22         THE COURT:  Why did the law become that way?

23   What is it that it's trying to accomplish?

24         THE DEFENDANT:  Trying to prove a point.

25         THE COURT:  Okay.  What else do you want to tell

1    me?

2            THE DEFENDANT:  And these girls were involved

3    with two guys in Minnesota, me here in Portland, two more

4    guys who came to the motel and stole their stuff, and

5    then two more guys that they supposedly worked for that

6    they met at the Greyhound, a total of seven people over a

7    couple of days.  So these girls, you know, were just

8    playing around.  It was like a field trip for them.  And

9    even when they were talking to the police, they were

10   bragging about how much money they made and how many

11   johns they had, like it was just a game.

12           And so back in Minnesota, one of the girls

13   contacts me and apologizes and tells me that she's going

14   to another state in the Midwest to go work for someone

15   else and that the Portland police wanted her to tell on

16   me.

17           The same thing with Chantelle.  Chantelle

18   contacts me and she was upset.  She went to jail for not

19   telling and said I was a "get out of jail free" card.

20   And she also told me her real age at that time and that

21   the police here in Portland wanted to put me in jail.

22   Also, in my discovery, she leaves messages telling me to

23   give her some money for not telling, for not telling on

24   me.

25           And it's like, when these girls cooperate with

1    the police, the Court treats them like victims.  And then

2    when they don't cooperate, they treat them like

3    criminals.  Both of these girls have been in contact with

4    me for quite some time telling me how the police here in

5    Portland have been harassing them to tell on me.  And

6    still they've been prostituting the whole time.

7         Dakota was just arrested in 2011 in Las Vegas for

8    prostitution.  And it's like that wasn't a federal crime,

9    but if she says that there's a black guy involved, then

10   it becomes a federal crime.

11        These girls -- these individuals are not being

12   held accountable for their actions and should be, when

13   willingly committing federal crimes.  And Chantelle and

14   Dakota had no interest in this case, and I don't believe

15   that these are girls -- particularly are victims.  So how

16   is it we have respect for the law and justice for the

17   victims when both of these girls are still prostituting

18   today?

19        I believe the police use these girls for

20   snitches, informants, use them and throw them back on the

21   street to catch other guys.  And, I mean, I have my

22   agreements with the law, and then I have my

23   disagreements.  Not all of these girls are victims.  Some

24   of them, it's not always that these girls are -- it's put

25   in their ear by some black guy to go out and prostitute.

 1   You know, some of these girls just do it on their own.

 2   It's kind of -- it seems like it's not -- from what I've

 3   seen, it seems like it's not against the law for these

 4   girls to be prostituting themselves, whether they're 17

 5   or 27.  But as soon as they say, "Oh, this black guy is

 6   involved," now it's a big crime.

 7        And I've -- I've personally looked at a whole

 8   bunch of cases, about 500 cases or so of sex trafficking,

 9   and I've seen some of the cases here that Mr. Strickland

10   has handled.  And like he said, he's prosecuted people

11   from about 22 years old to 35 years old, and he's

12   recommended sentences of 20 years to 40 years.  One

13   particular -- all African Americans, all African American

14   guys.

15        One particular case that caught my attention was

16   a guy I met who he prosecuted, a white guy, who he only

17   recommended a minimum of 10 years to, and he had the same

18   type of conduct as the black guys did who got 20 to 40

19   years.  And I read his PSI stuff and all that, and he was

20   pretty high on the grid.  And it's like he only got five

21   years probation, you know, a 10-year sentence.  That's

22   about four and a half, five years.  Together that's only

23   about a 10-year plan.  But, you know, he's white.  But

24   all the other guys, African Americans, they got 20, 40

25   years.

1          And the situation with Claudia, as you know, I
2   strongly disagree with all of the conduct stuff except
3   for what I did do.  And, you know, I took pictures and
4   got a motel and bought a phone and lingerie, and that was
5   pretty -- I didn't coach this girl.  I didn't know her.
6   I didn't give her any dope.  I didn't shoot her up with
7   heroin or anything like that.  I never even had sex with
8   the girl.

9          And it's like how do you -- how are you supposed
10  to feel towards somebody who sits there and says you did
11  all these bad things to her?  And I never did any -- I
12  never even touched this girl.  And she never mentions any
13  of her own people who did -- who really did this stuff.
14  Claudia was running with some of the Mexican dealers out
15  there on 162nd and Burnside.  One of those dealers ended
16  up happening to know Duane and brought her over there,
17  and she came back over there on her own, and that's when
18  Duane called me and told me he had this girl over there.
19  But Claudia never mentions any of her own people who did
20  this to her.  She only mentions me and Duane's name.  And
21  so, yeah, I didn't -- I didn't do anything.

22          Also, before we even went to the motel room, the
23  night before that -- this was like Tuesday night or so,
24  and me and Claudia was in Duane's room.  Duane had
25  company, and Duane told Claudia to stay in the room with

1    me.  I'd been smoking marijuana, so I'm laid out on the

2    bed.  I'm about ready to pass out, but I'm sketchy,

3    because I don't know Claudia and she's high.  She'd been

4    high since that Friday I came in contact with her, and I

5    started talking with her that Monday and went to jail

6    Wednesday.

7             And I ended up passing out.  I wake up in the

8    morning and Claudia is gone.  I go in the living room and

9    Duane is sleeping on the couch.  I asked him where the

10   girl is.  She's nowhere to be found.  I go about my

11   business.  Duane goes about his business.  I called him

12   later that afternoon, he's like, "Hey, this girl is

13   sitting on my stairs."

14            So I come back to the apartment, and Duane is

15   sitting out there and talking to this girl at the bottom

16   of the stairs.  Duane is telling Claudia that she can't

17   be here, that he didn't want her here and she has to

18   leave.  And I told Claudia -- Claudia told me she was 19

19   years old, she had been up here from Winter, California

20   for the past two years.

21            Now, Duane tells her all this stuff, and then I'm

22   like, "Okay.  Well, you can come with me, Claudia, but

23   this is what's up, you know, what it is."  And Claudia

24   goes, "All right.  Okay.  Well, I'll go with you."

25            MR. STRICKLAND:  Your Honor, I would like to not

```
 1    have the victim's name on the record.

 2              THE COURT:  CC.

 3              THE DEFENDANT:  Okay.  CC.  And that's pretty

 4    much -- she got in my car.  I said, "CC, you don't have

 5    to come with me.  I don't need you.  I don't need any

 6    trouble," you know, because she just ran off that -- the

 7    night before she just ran off, you know.  And I had just

 8    went to 162nd and Burnside that same night and got her

 9    stuff.

10              So when Duane put her out that morning, late

11    night, early in the morning Tuesday, I was kind of like,

12    "Duane, why did you just put her out?  I just went and

13    got her stuff and all that."

14              And CC tries to make it seem like she was staying

15    at Duane's house while she had ran away all this time.

16    In my reports from her foster parents that I was able to

17    read, she says -- the foster parents say that CC was

18    staying over on 162nd and Burnside.  And that's where I

19    took her to get her bag of clothes.  She walked into this

20    apartment and came back out.  And nobody came and said

21    anything to me.  It was just in and out, and I took her

22    back over to Duane's apartment.  So that's pretty

23    much -- that's pretty much all that happened with

24    Claudia -- I mean, CC.

25              And, you know -- well, anything that you would
```

1  like to ask about?

2          THE COURT:  No, sir.

3          THE DEFENDANT:  Okay.

4          THE COURT:  Is there anything else you want to

5  tell me?

6          THE DEFENDANT:  No.  That should be it.

7          THE COURT:  Thank you.  You should remain

8  standing.

9          MR. STRICKLAND:  I just wanted to address the

10  issue with respect to race on the defendants.

11          THE COURT:  Sure.  Go ahead.  You can respond to

12  that.

13          MR. STRICKLAND:  Your Honor, I don't believe

14  Mr. Sanders is intending to say that the Government or

15  myself are prosecuting only African Americans.  I think

16  he notices the fact that these are African American men

17  that are being prosecuted.

18          But I should point out that James Jackson, who

19  received a 40-year sentence, was a very, very violent

20  offender who had brutalized women for 20 years, was a

21  career offender, and had hurt so many women that a

22  40-year sentence was very deserved.

23          And he talked about Jefferson Davis, a very

24  violent offender who beat a 13-year-old child for a long

25  period of time and trafficked her through many different

1  states.  His sentence was 20 years, but he was looking at

2  a life sentence if he went to trial, and that 20-year

3  sentence was a very much appreciated sentence by his

4  lawyer.

5          Mr. Zimmer was a person whose guideline range

6  turned out to be 121 months on the low end.  He received

7  a 121-month sentence.  The mandatory minimum is 120

8  months.  He trafficked a 16- or 17-year-old girl from

9  Eugene for about a month and a half.  She didn't perform

10 that many sex acts.  But that was his entire criminal

11 history, so that's why he received a 120-month sentence.

12 If Mr. Sanders were in the same position, he would get

13 the same sentence.  So I just want to point that out.

14          But with respect to all these other African

15 American men who committed these crimes and were

16 sentenced to lengthy sentences, I can say one thing that

17 is universal about them.  James Jackson stood here

18 knowing he was going to get a minimum of 30 years and got

19 a 40-year sentence.  He apologized in a long letter to

20 all the victims.  So did Jefferson Davis.  So did Stanley

21 Spriggs.  They realized their mistakes and apologized to

22 all their victims and their families.

23          THE DEFENDANT:  Can I say something else?

24          THE COURT:  I'm sorry?

25          THE DEFENDANT:  I wanted to say something else.

 1              The other thing, Your Honor, is the guys

 2     who -- these johns who buy these girls for acts of sex,

 3     they seem to be able to get off the hook, to have no

 4     punishment at all.  And it's like here it is, I'm being

 5     charged with a violent crime because of the risk these

 6     girls take in getting diseases and getting beat up by

 7     johns and all this other crazy stuff.  But these johns

 8     who are caught wanting to -- or paying to have sex with

 9     these girls, they don't get the same type of treatment.

10     A lot of times you see them get probation, class, or some

11     type of small fine.  And guys like me, the blame is just

12     given out on us.

13              And these girls -- I never made an underage girl

14     go and prostitute herself.  I've never done anything like

15     that.  I met Chantelle and Dakota on an adult website.

16     That's where my mind was.  I met Claudia in an adult

17     establishment where a bunch of older people are smoking

18     dope.  My intentions was not going and looking for some

19     young girl.

20              THE COURT:  Thank you.

21              Mr. Sanders, when I asked you the question about

22     why the consequences of your behavior are so large and

23     severe, I was trying to see whether you had any insight

24     into why the Government and Congress has taken such a

25     position regarding your particular offenses, why it is

1   that you're facing this particular type of a sentence,

2   what is it about this case that puts you in the posture

3   where you're going to spend between 180 and 210 months in

4   prison at 29 years old.  That's a huge, huge amount of

5   time.

6          And I was hoping you would be able to tell me

7   that the law is intended to protect children.  I was

8   hoping that you would be able to convey to me some

9   measure of empathy towards the people that you affected

10  in this case by using them or setting them up as

11  prostitutes.  I was hoping you would be able to convey to

12  me how wrong that is and that you recognize that that's

13  really, really wrong.

14         I was hoping that you would convey to me your

15  responsibility and acceptance of responsibility for your

16  role in all of this and the fact that you are the adult.

17  You were 30 years, 29 years old, 28 years old, and they

18  were children.  And it doesn't matter how sophisticated

19  they may have been or what their experiences may have

20  been.  You were the adult.  They were children.

21         But you didn't express any of that to me.  What

22  you expressed to me is that you're a victim in all this

23  and that they were out doing all of these other things

24  and you somehow got caught up in their history and their

25  behaviors.  And then you expressed how disappointed you

```
 1   were about the way the johns may have been treated and
 2   how you were facing this sentence and, in fact, mentioned
 3   how your race may have had something to do with all of
 4   this.  You didn't say that directly, but certainly that's
 5   what you were intimating to this Court.
 6            And I heard not one word from you, not one
 7   regarding "I am sorry for the things that I have done.  I
 8   have learned from this experience," not a single syllable
 9   about that.  Your whole statement to me -- and I did not
10   interrupt you -- was about you and about how your victims
11   caught you up in all of this.
12            I have to say I'm pretty disappointed, because as
13   I look at you and I have listened to you, I know that
14   you're a very intelligent person.  You're a very
15   intelligent person.  You read 500 cases.  You were able
16   to articulate to this Court the facts of those cases and
17   the outcomes of those cases.  And from what I could see,
18   that was all from memory.  That's impressive.  And yet
19   you have no insight as to why the law is what it is.  You
20   have no insight --
21            THE DEFENDANT:  Can I say something?
22            THE COURT:  No.  I didn't interrupt you.  You do
23   not get to interrupt me.
24            THE DEFENDANT:  All right.
25            THE COURT:  You have no insight as to how your
```

1  behavior continues to make a bad situation for children

2  even worse, none, no measure.  There are victims in this

3  case.  Was there one word of apology towards your

4  victims?  No, nothing.

5        Having said what I have said about this case and

6  your lack of insight, I also have to take into

7  consideration what the law requires me to do, and I'm

8  required to consider the sentencing guidelines and what

9  they suggest and your agreement within those sentencing

10  guidelines of 188 to 210 months.

11        I have to come up with a sentence that is

12  sufficient, but not longer than necessary.  And as you

13  know, because I have repeated it over and over again, 188

14  to 210 months is a huge amount of time, particularly for

15  somebody that is as young as you are.

16        But the nature and circumstances of this case,

17  with multiple victims and your history and

18  characteristics -- and I want to have a word about that.

19  As I reviewed the presentence report, it is apparent to

20  me that you have little respect for the law and less

21  respect for women in general.  There's a lot of anger

22  that permeates this report.  Your situations with police

23  and with women that you have been involved with often

24  involve anger, a very angry response to what's happening,

25  and very little, "Hey, I'm sorry.  You know, I shouldn't

1    have been doing what was going on here," very little

2    acceptance of responsibility.  Legally you accepted

3    responsibility for what happened.  Verbally, I hear no

4    acceptance of any responsibility, none.

5            Your history and characteristics show somebody

6    that is a 5 on the criminal history scale and has been

7    involved with some events involving women before.

8            I have to choose a sentence that promotes respect

9    for the law.  I have to choose a sentence that provides

10   just punishment and that reflects the seriousness of what

11   you did in this particular case.  I also have to choose a

12   sentence that affords adequate deterrence to criminal

13   conduct and protects the public from further crimes by

14   the defendant, and have to choose a sentence that should

15   there be a request for restitution, that the victims

16   receive some restitution.

17           As to each of these counts, I am sentencing you

18   to 194 months with the Bureau of Prisons.  Upon release

19   from confinement, you will serve a 10-year term of

20   supervised release, subject to the standard conditions of

21   supervision adopted by this Court and the following

22   special conditions:  You'll cooperate in the collection

23   of DNA as requested by the probation officer, if required

24   by law.

25           Your employment shall be subject to the approval

1    of your probation officer.

2            You will register, if required by law, with a

3    state sex offender registration agency in any state where

4    you reside or are employed or carry on a vocation or are

5    a student and shall provide written notification of

6    compliance with this condition as directed by the

7    probation officer.

8            You shall have no contact with minors in person,

9    by telephone, through correspondence, or a third party

10   unless approved by the probation officer and the Court.

11           You will have no contact with your victims DN,

12   CK, and CC in person, by telephone, correspondence,

13   through a third party, unless approved in advance by the

14   probation officer.

15           You'll participate in a mental health treatment

16   program to include domestic violence counseling and anger

17   management counseling as approved by the probation

18   officer.

19           You are prohibited from using or possessing any

20   computer, including any handheld computing device, any

21   electronic device capable of connecting to an online

22   service, or any data storage media without the prior

23   written approval of the probation officer.  That includes

24   but is not limited to computers at public libraries,

25   Internet cafes, or the defendant's place of employment or

1    education.

2           That condition, I believe, was objected to by the

3    defendant.  I specifically find that it is appropriate

4    given that the defendant used the Internet and computers

5    in order to accomplish his crime.  The defendant is

6    prohibited from accessing any online computer service at

7    any location without the prior written approval of the

8    probation officer.

9           As to Count 3, the defendant is committed to the

10   Bureau of Prisons, as I indicated, for the same period of

11   time, and the same as to Count 4.  All those times are

12   concurrent to each other.

13          No fine is being ordered in this matter as the

14   defendant has no financial resources nor appreciable

15   earning ability.

16          Pursuant to 18 USC 13 -- excuse me, 3013, the

17   defendant will pay a fee assessment in the amount of $100

18   on each count for a total of $300, due immediately, in

19   full.

20          Payment of criminal monetary penalties, including

21   restitution, shall be due during the period of

22   imprisonment as follows:  50 percent of wages earned if

23   the defendant is participating in a prison industries

24   program, $25 per quarter if the defendant is not working

25   in a prison industries program.  It is ordered that

48

```
 1   resources received from any source, including
 2   inheritance, settlement, or any other judgment, shall be
 3   applied to any restitution or fines still owed pursuant
 4   to 18 USC 3664(n).
 5            There are some things that we need to talk about
 6   still, but I want to first turn to the Government and
 7   make sure that the sentences I imposed on Counts 3 and 4
 8   are consistent with the understanding of the parties and
 9   within the law.
10            MR. STRICKLAND:  1, 3, and 4, yes, Your Honor.
11            THE COURT:  Mr. Sanders, I note that you have
12   waived some or all of your appellate rights as part of
13   the plea agreement.  Such waivers are generally
14   enforceable.  If you believe your plea agreement allows
15   you to appeal, you must file a notice of appeal within 14
16   days of the entry of judgment.  If you're unable to pay
17   the cost of an appeal, you may apply for leave to appeal
18   in forma pauperis.  If you so request, the clerk of the
19   court will prepare and file a notice of appeal on your
20   behalf.
21            Is there anything else from the Government that
22   we need to take care of?  Was there one count that needed
23   to be dismissed?
24            MR. STRICKLAND:  Count 2, Your Honor.
25            THE COURT:  Your motion to dismiss Count 2 is
```

 1    granted.

 2              Anything else from the Government?

 3              MR. STRICKLAND:  And I assume the Court is

 4    adopting the PSR, except for the modifications discussed

 5    in the hearing.

 6              THE COURT:  I am and I have, yes.

 7              Mr. Andersen?

 8              MR. ANDERSEN:  Your Honor, I have already raised

 9    my objections to the PSR.  I did not specifically discuss

10    some of the objections I noted in my submission to the

11    Court concerning the supervised release conditions.  I

12    just want to note my objection to a number of those,

13    specifically the no contact with minors provision and,

14    more generally, the prohibition against using computers

15    or online services.

16              I do believe Mr. Sanders would be interested in

17    pursuing any available appeals.  I think it might be more

18    appropriate for that and for any post-conviction sort of

19    issue to allow another attorney to handle that.

20              THE COURT:  I agree.  Let me address -- I

21    addressed your objection regarding the computer issues

22    already in my statements and the reasons why I feel that

23    condition is appropriate.

24              Your other objection had to do with contact with

25    minors.  The provision which I instructed, it says

1  "without prior approval by the probation officer," and

2  that has to do with the fact that minors were the

3  individuals that were victims in this particular case.  I

4  assume that he would readily be able to obtain approval

5  as regards family members and things like that.  Those

6  are the reasons for adopting that particular provision

7  and why I think it is appropriate.

8           As regards his right to appeal, we will of course

9  file that if you let us know what the basis for that

10 appeal is and allow you to withdraw, and then we'll

11 appoint new lawyers for appellate purposes.

12          Is there anything else from the defense

13 perspective?

14          MR. ANDERSEN:  I don't believe so.

15          THE COURT:  Do you want a designation?

16          MR. ANDERSEN:  Your Honor, I guess there's a

17 couple things.  One, I believe Sheridan would be the most

18 appropriate.  He does have family members in this area.

19 I think Sheridan would be the most appropriate.

20          Also, if there can be anything in the judgment

21 regarding programs, we would ask that any available

22 programs that he could avail himself of, I think that

23 would be a good thing for him.

24          THE COURT:  Thank you.

25          Does the Government have any statement on either

```
 1   of those issues?
 2            MR. STRICKLAND:  No, Your Honor.
 3            THE COURT:  As regards designating Sheridan, I'm
 4   happy to designate Sheridan to make it more convenient
 5   for his family members and loved ones to visit him.
 6            As regards the request for programs, I am always
 7   a proponent that anybody that's incarcerated can avail
 8   themselves of any appropriate program.  Your motion is
 9   granted.
10            Thank you.  We are in recess.
11            Good luck to you, Mr. Sanders.
12
13
14            (Proceeding concluded.)
15
16
17
18
19
20
21
22
23
24
25
```

1                               --oOo--

2

3           I certify, by signing below, that the

4      foregoing is a correct transcript of the record

5      of proceedings in the above-titled cause.  A

6      transcript without an original signature,

7      conformed signature or digitally signed signature

8      is not certified.

9

10

11     */s/ Nancy M. Walker*                    *7/29/13*

12     _____    _____
       NANCY M. WALKER, CSR, RMR, CRR        DATE
13     Official Court Reporter
       Oregon CSR No. 90-0091
14

15

16

17

18

19

20

21

22

23

24

25

AO 245B     (Rev. 09/11) Judgment in a Criminal Case - DISTRICT OF OREGON CUSTOMIZED 11/2011
            Sheet 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **JUDGMENT IN A CRIMINAL CASE** |
| **V.** | **Case Number: 3:11-CR-00385-HZ-1** |
| **RASHAD Q. SANDERS** | **USM Number:  73851-065** |
| | Benjamin T. Andersen |
| | Defendant's Attorney |
| | Kemp L. Strickland |
| | Assistant U.S. Attorney |

**THE DEFENDANT:**

[X]     pleaded guilty to counts 1,3 and 4 of the Superseding Indictment

The defendant is adjudicated guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC 2423(a) | TRANSPORTATION OF A MINOR | In September 2008 | 1 |
| 18 USC 1591(a) and (b)(2), 1594(a) | SEX TRAFFICKING OF A MINOR | In September 2008 | 3 |
| 18 USC 1591(a) and (b)(2), 1594(a) | SEX TRAFFICKING OF A MINOR | Beginning about June 2010, and continuing through about May 2011 | 4 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[  ]     The defendant has been found not guilty on count(s) _____, and is discharged as to such count(s).
[X]     Count 2 of the Superseding Indictment and any other remaining counts are dismissed on the motion of the United States.
[X]     The defendant shall pay a special assessment in the total amount of $300.00 ($100 for each of Counts 1, 3 and 4) payable immediately to the Clerk of the U.S. District Court.  (See also the Criminal Monetary Penalties sheet.)

**IT IS ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and the United States Attorney of any material change in the defendant's economic circumstances.

June 3, 2013
_____
Date of Imposition of Sentence

_____
Signature of Judicial Officer

MARCO A. HERNANDEZ, UNITED STATES DISTRICT JUDGE
_____
Name and Title of Judicial Officer

June     4     , 2013
_____
Date

AO 245B    (Rev. 09/11) Judgment in a Criminal Case - DISTRICT OF OREGON CUSTOMIZED 11/2011
          Sheet 2 – Imprisonment

| | | |
|---|---|---|
| DEFENDANT: | SANDERS, Rashad Q. | Judgment–Page 2 of  6 |
| CASE NUMBER: | 3:11-CR-00385-HZ-1 | |

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of:
**ONE HUNDRED NINETY-FOUR (194) MONTHS on Count 1;**
**ONE HUNDRED NINETY-FOUR (194) MONTHS on Count 3, to run concurrently with sentence imposed on Count 1 hereof; and,**
**ONE HUNDRED NINETY-FOUR (194) MONTHS on Count 4, to run concurrently with sentence imposed on Count 1 hereof**.

[X]  The court makes the following recommendations to the Bureau of Prisons:

**The court recommends placement of defendant at FCI, Sheridan.   The court further recommends that defendant be considered for and allowed to participate in all available treatment and educational programs.**

[X]  The defendant is remanded to the custody of the United States Marshal.

[  ]  The defendant shall surrender to the United States Marshal for this district:

    [  ]    at _____ [  ] a.m.   [  ] p.m. on_____.

    [  ]    as notified by the United States Marshal.

[  ]  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    [  ]    before 2:00 p.m. on _____.

    [  ]    as notified by the United States Marshal and/or Pretrial Services.

### RETURN

The Bureau of Prisons will determine the amount of prior custody that may be credited towards the service of sentence as authorized by Title 18 USC §3585(b) and the policies of the Bureau of Prisons.

I have executed this judgment as follows:

_____

_____

Defendant delivered on _____ To _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

BY _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 09/11) Judgment in a Criminal Case - DISTRICT OF OREGON CUSTOMIZED 11/2011
Sheet 3 – Supervised Release

| DEFENDANT: | SANDERS, Rashad Q. | Judgment–Page 3 of 6 |
|---|---|---|
| CASE NUMBER: | 3:11-CR-00385-HZ-1 | |

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **TEN (10) YEARS**.

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

[ ]   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

If this judgment imposes a fine or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties section of this judgment.

The defendant shall comply with the Standard Conditions of Supervised Release that have been adopted by this court as set forth in this judgment. The defendant shall also comply with the Special Conditions of Supervision as set forth below and any additional conditions attached to this judgment.

# SPECIAL CONDITIONS OF SUPERVISION

1.   The defendant shall cooperate in the collection of DNA as directed by the probation officer, if required by law.

2.   The defendant's employment shall be subject to approval by the probation officer.

3.   The defendant shall register, if required by law, with the state sex offender registration agency in any state where the defendant resides, is employed, carries on a vocation, or is a student and shall provide written notification of compliance with this condition as directed by the probation officer.

4.   The defendant shall have no contact with minors (in person, by telephone, through correspondence, or a third party) unless approved by the probation officer and the Court.

5.   The defendant shall have no contact with victims D.M., C.K. and C.C. in person, by telephone, through correspondence of a third party unless approved in advance by the probation officer.

6.   The defendant shall participate in a mental health treatment program, to include domestic violence counseling and/or anger management counseling, as approved by the probation officer.

7.   the defendant is prohibited from using or possessing any computer(s) (including any handheld computing device, any electronic device capable of connecting to any on-line service, or any data storage media) without the prior written approval of the U.S. Probation Officer. This includes, but is not limited to, computers at public libraries, Internet cafes, or the defendant's place of employment or education.

8.   The defendant is prohibited from accessing any on-line computer service at any location (including employment or education) without the prior written approval of the U.S. Probation Officer.

9.   The defendant shall pay restitution to the victims in an amount and at a rate to be determined if requests for restitution are received.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case - DISTRICT OF OREGON CUSTOMIZED 11/2011
Sheet 3A – Supervised Release

| | | |
|---|---|---|
| DEFENDANT: | SANDERS, Rashad Q. | Judgment–Page 4 of 6 |
| CASE NUMBER: | 3:11-CR-00385-HZ-1 | |

# STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

The Judges of the District of Oregon adopt the following standard conditions of probation and supervised release to apply in every case in which probation and/or supervised release is imposed upon a defendant.  The individual judge may impose other conditions deemed advisable in individual cases of probation or supervised release supervision, as consistent with existing or future law.

1.  The defendant shall report in person to the probation office for the district to which he or she is released within 72 hours of release from the custody of the Bureau of Prisons.
2.  The defendant shall not commit another federal, state, or local crime and shall not illegally possess a controlled substance. Revocation of probation or supervised release is mandatory for illegal possession of a controlled substance.
3.  The defendant shall not possess a firearm, destructive, or dangerous device.
4.  If the defendant illegally uses drugs or abuses alcohol, has a history of drug or alcohol abuse, or drug use or possession is determined to be an element of the defendant's criminal history or instant offense, the defendant shall participate in a substance abuse treatment program as directed by the probation officer which may include urinalysis testing to determine if the defendant has used drugs or alcohol. In addition to urinalysis testing that may be part of a formal drug treatment program, the defendant shall submit up to eight (8) urinalysis tests per month.
5.  The defendant shall submit to a search of his/her person, residence, office or vehicle, when conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision.  Failure to submit to a search may be grounds for revocation.  The defendant shall warn other residents that the premises may be subject to searches pursuant to this condition.
6.  The defendant shall not leave the judicial district without the permission of the court or probation officer.
7.  The defendant shall report to the probation officer as directed by the court or probation officer, and shall submit a truthful and complete written report within the first five days of each month.
8.  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer. The defendant may decline to answer inquiries if a truthful response would tend to incriminate him/her.  Such a refusal to answer may constitute grounds for revocation.
9.  The defendant shall support his or her dependents and meet other family responsibilities to the best of his or her financial ability.
10. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons.
11. The defendant shall notify the probation officer **within 72 hours** of any change in residence or employment.
12. The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician. If, at any time, the probation officer has reasonable cause to believe the defendant is using illegal drugs or is abusing alcohol, the defendant shall submit to urinalysis testing, breathalyzer testing, or reasonable examination of the arms, neck, face, and lower legs.
13. The defendant shall not knowingly frequent places where controlled substances are illegally sold, used, distributed, or administered.
14. The defendant shall not knowingly associate with any persons engaged in criminal activity, and shall not knowingly associate with any person convicted of a felony, unless granted permission to do so by the probation officer.
15. The defendant shall permit a probation officer to visit him or her at any reasonable time at home or elsewhere, and shall permit confiscation of any contraband observed in plain view by the probation officer.
16. The defendant shall notify the probation officer within **72 hours** of being arrested or questioned by a law enforcement officer.
17. The defendant shall not enter into any agreement to act as an informant or special agent of a law enforcement agency without the permission of the court.
18. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by his or her criminal record or personal history and characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such a notification requirement.  This requirement will be exercised only when the probation officer believes a reasonably foreseeable risk exists or a law mandates such notice.  Unless the probation officer believes the defendant presents an immediate threat to the safety of an identifiable individual, notice shall be delayed so the probation officer can arrange for a court hearing and the defendant can obtain legal counsel.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case - DISTRICT OF OREGON CUSTOMIZED 11/2011
           Sheet 5 – Criminal Monetary Penalties

| DEFENDANT: | SANDERS, Rashad Q. | Judgment–Page 5 of 6 |
|---|---|---|
| CASE NUMBER: | 3:11-CR-00385-HZ-1 | |

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the Schedule of Payments set forth in this Judgment:

| | Assessment (as noted on Sheet 1) | Fine | Restitution | TOTAL |
|---|---|---|---|---|
| **TOTALS** | $300.00 | $0 | Reserved | $300.00 |

[X]   The determination of restitution is reserved should requests be received from victims.  An *Amended Judgment in a Criminal Case* will be entered if such determination is amde.

[ ]   The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(I), all non-federal victims must be paid in full prior to the United States receiving payment.

| Name of Payee | Total Amount of Loss* | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | $ | Reserved | |
| **TOTALS** | **$0** | **Reserved** | |

[ ]   If applicable, restitution amount ordered pursuant to plea agreement

[ ] The defendant shall pay interest on any fine or restitution of more than $2,500, unless fine and restitution are paid n full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the paymnt options on the Schedule of Payments may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

[ ]   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    [   ]   the interest requirement is waived for the [   ] fine and/or [   ] restitution.

    [   ]   the interest requirement for the [   ] fine and/or [   ] restitution is modified as follows:

> Any payment shall be divided proportionately among the payees named unless otherwise specified.

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B     (Rev. 09/11) Judgment in a Criminal Case - DISTRICT OF OREGON CUSTOMIZED 11/2011
Sheet 6 – Schedule of Payments

| | |
|---|---|
| DEFENDANT: SANDERS, Rashad Q. | Judgment–Page 6 of 6 |
| CASE NUMBER: 3:11-CR-00385-HZ-1 | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A.**  [X]  Lump sum payment of **$300.00** due immediately, balance due

   [ ]  not later than _____, or
   [X]  in accordance with C below; or

**B.**  [X]  Payment to begin immediately (may be combined with C below), or

**C.**  [X]  If there is any unpaid balance at the time of defendant's release from custody,   it shall be paid in monthly installments of not less than $25.00 until paid in full, to commence immediately upon release from imprisonment.

**D.**  [ ]  Special instructions regarding the payment of criminal monetary penalties:

[X] Payment of criminal monetary penalties, including restitution, shall be due during the period of imprisonment as follows:
   (1) 50% of wages earned if the defendant is participating in a prison industries program; (2) $25 per quarter if the defendant is not working in a prison industries program.

It is ordered that resources received from any source, including inheritance, settlement, or any other judgment, shall be applied to any restitution or fine still owed, pursuant to 18 USC § 3664(n).

All criminal monetary penalties, including restitution, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of Court at the address below, unless otherwise directed by the Court, the Probation Officer, or the United States Attorney.

| [X] Clerk of Court | [ ] Clerk of Court | [ ] Clerk of Court |
|---|---|---|
| **US District Court - Oregon** | **US District Court - Oregon** | **US District Court - Oregon** |
| **1000 SW Third Avenue** | **405 East 8th Avenue** | **310 West Sixth Street** |
| **Suite 740** | **Suite 2100** | **Room 201** |
| **Portland, OR 97204** | **Eugene, OR 97401** | **Medford, OR 97501** |

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

**[ ] Joint and Several**
Case Number
Defendant and Co-Defendant Names                                  Joint and Several            Corresponding Payee,
(including defendant number)          Total Amount          Amount          if appropriate


   [ ]     The defendant shall pay the cost of prosecution.
   [ ]     The defendant shall pay the following court cost(s):
   [ ]     The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA

v.

District Court Case No. **3:11-CR-00385-HZ-1**

District Court Trial Judge: **Marco A. Hernandez**

RASHAD Q. SANDERS,

_____ Defendant. _____

### NOTICE OF APPEAL

(a)    **Notice of Appeal**: Notice is given to the United States Court of Appeals for the Ninth Circuit that Defendant, Andrew Laud Barnett, appeals from the following:

____    Conviction only (Fed. R. Crim. P. 32(b)).

_X_    Conviction and sentence.

____    Sentence only (18 U.S.C. § 3742).

____    Order (Specify title, nature and date of entry of the order appealed from):

(b)    **Sentence imposed**: IMPRISONMENT: **ONE HUNDRED NINETY-FOUR (194) MONTHS on Count 1; ONE HUNDRED NINETY-FOUR (194) MONTHS on Count 3, to run concurrently with sentence imposed on Count 1; and, ONE HUNDRED NINETY-FOUR (194) MONTHS on Count 4, to run concurrently with sentence imposed on Count 1;** SUPERVISED RELEASE: TEN (10) years; SPECIAL ASSESSMENT: $300.00 ($100 as to each count).

(c)    **Bail Status**: N/A

ENTERED on behalf of the Defendant this _5th_ day of _June_, 2013.

Mary L. Moran, Clerk

By _/s/ Michelle Rawson_____          _____To be appointed_____
    Deputy Clerk                                  Counsel for Appellant

_____

Is a Transcript Required on Appeal?          _X_ Yes          _____ No

Name of Court Reporter: _Nancy Walker_____

Note:    If transcript is required, Appellant's counsel must complete the Transcript Order Form (CA 9-036) and make appropriate financial arrangements with the court reporter.

crim-nte-of-appeal

06/11/2002

# U.S. District Court
## District of Oregon (Portland (3))
## CRIMINAL DOCKET FOR CASE #: 3:11-cr-00385-HZ-1

Case title: USA v. Sanders                        Date Filed: 09/28/2011
Related  Case:  3:12-cv-00126-HZ

---

Assigned to: Judge Marco A. Hernandez

Appeals court case number: 13-30156
Ninth Circuit

**Defendant (1)**

| | | |
|---|---|---|
| **Rashad Q. Sanders**<br>USM 73851065 | represented by | **Robert W. Rainwater**<br>Rainwater Law Group<br>1430 Willamette Street<br>Suite 492<br>Eugene, OR 97401<br>(541) 344-1785<br>Fax: (541) 343-0463<br>Email: rrainwater@rainwaterlaw.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **Benjamin T. Andersen**<br>121 SW Salmon Street<br>1420 World Trade Center<br>Portland, OR 97204<br>(503) 222-2510<br>Fax: (503) 222-6303<br>Email: btandersen@pacificnwlaw.com<br>*TERMINATED: 06/03/2013*<br>*Designation: CJA Appointment* |
| | | **Mark Austin Cross**<br>Mark Austin Cross, PC<br>294 Warner Milne Road<br>Oregon City, OR 97405-4044<br>(503) 655-0037<br>Fax: (503) 650-0367<br>Email: yomarko@mac.com |

*TERMINATED: 10/05/2012*
*Designation: CJA Appointment*

**Susan A. Russell**
Federal Public Defender's Office
101 S.W. Main Street
Suite 1700
Portland, OR 97204
503-326-2123
Fax: 503-326-5524
Email: susan_russell@fd.org
*TERMINATED: 01/10/2012*
*Designation: Public Defender or*
*Community Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| | SENTENCING DATE: 6/3/13; IMPRISONMENT: One Hundred Ninety-Four (194) months on Count 1; One Hundred Ninety-Four (194) months on Count 3, to run concurrent with sentence imposed on Count 1 hereof; and One Hundred Ninety-Four (194) months on Count 4, to run concurrently with the sentence imposed on Count 1 hereof; SUPERVISED RELEASE: TEN (10) YEARS; SPECIAL ASSESSMENT: $100.00 for each of Counts 1, 3, and 4. |
| TRANSPORTATION OF A MINOR = 18 USC 2423(a) (1s) | |
| | SENTENCING DATE: 6/3/13; IMPRISONMENT: One Hundred Ninety-Four (194) months on Count 1; One Hundred Ninety-Four (194) months on Count 3, to run concurrent with sentence imposed on Count 1 hereof; and One Hundred Ninety-Four (194) months on Count 4, to run concurrently with the sentence imposed on Count 1 hereof; SUPERVISED RELEASE: TEN (10) YEARS; SPECIAL ASSESSMENT: $100.00 for each of Counts 1, 3, and 4. |
| SEX TRAFFICKING OF A MINOR = 18 USC 1591(a) and (b)(2), 1594(a) (3s) | |
| | SENTENCING DATE: 6/3/13; IMPRISONMENT: One Hundred Ninety-Four (194) months on Count 1; One Hundred Ninety-Four (194) months on Count 3, to run concurrent with sentence imposed on Count 1 hereof; and One |
| SEX TRAFFICKING OF A MINOR = 18 | |

USC 1591(a) and (b)(2), 1594(a)
(4s)

Hundred Ninety-Four (194) months on Count 4, to run concurrently with the sentence imposed on Count 1 hereof; SUPERVISED RELEASE: TEN (10) YEARS; SPECIAL ASSESSMENT: $100.00 for each of Counts 1, 3, and 4.

### Highest Offense Level (Opening)

Felony

| Terminated Counts | Disposition |
|---|---|
| 18:2423(a) TRANSPORTATION OF A MINOR (1-2) | DISMISSED |
| TRANSPORTATION OF A MINOR = 18 USC 2423(a) (2s) | DISMISSED |
| 18:1591(a)and(b)(2) SEX TRAFFICKING OF A MINOR (3) | DISMISSED |

### Highest Offense Level (Terminated)

Felony

| Complaints | Disposition |
|---|---|
| None | |

### Plaintiff

| USA | represented by | **Kemp L. Strickland** United States Attorney's Office 1000 S.W. Third Avenue Suite 600 Portland, OR 97204 (503) 727-1056 Fax: (503) 727-1117 Email: kemp.strickland@usdoj.gov *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
|---|---|---|

| Date Filed | # | Docket Text |
|---|---|---|

| 09/28/2011 | 1 | Indictment (Redacted) as to Rashad Q. Sanders (1) count(s) 1-2,Transportation of Minor 3, Sex Trafficking of a Minor (schm) (Entered: 09/29/2011) |
| 09/28/2011 | 2 | Indictment Unredacted Version Filed Under Seal as to Defendant Rashad Q. Sanders (schm) (Entered: 09/29/2011) |
| 09/29/2011 | 3 | Notice of Case Assignment to Judge Marco A. Hernandez. (schm) (Entered: 09/29/2011) |
| 11/04/2011 | 4 | **Minutes of Proceedings:** First Appearance, Arraignment, and Detention Hearing held before Magistrate Judge Dennis J. Hubel as to Defendant Rashad Q. Sanders. ORDER - Granting the government's oral motion to unseal this action. Order appointing Assistant Federal Defender Susan Russell to represent the defendant. Defendant advised of rights. Defendant waived reading of the Indictment. Defendant to proceed as named. Defendant arraigned as to all Count(s) pending against him: Not guilty plea(s) entered. 3-day Jury Trial is set for **January 10, 2012 at 09:00AM**, before Judge Hernandez. Order that Discovery is due in 14 days. Detention Hearing held - defendant is detained as a flight risk and a danger. Kemp Strickland present as counsel for the government. Susan Russell present as counsel for defendant. Court Reporter: KB/FTR. (kb) (Entered: 11/04/2011) |
| 11/04/2011 | 5 | Order of Detention as to Rashad Q. Sanders by Magistrate Judge Dennis J. Hubel signed on 11/4/11. (schm) (Entered: 11/07/2011) |
| 11/09/2011 | 6 | **Trial Management Order** as to Rashad Q. Sanders: ANY RESCHEDULING REQUEST SHALL BE MADE IN WRITING AT LEAST TWO WEEKS PRIOR TO THE TRIAL DATE. WITHIN THE MOTION TO CONTINUE, COUNSEL NEEDS TO STATE IF DEFENDANT AGREES WITH THE REQUEST AND IF OPPOSING COUNSEL AGREES. THE MOVING PARTY SHOULD CONTACT THE OTHER SIDE AND STATE THEIR POSITION WITHIN THE MOTION. A 3-DAY JURY TRIAL IS SET FOR **JANUARY 10, 2012 AT 9:00 AM**. (1) Seven days prior to trial the parties shall simultaneously file: (a) all motions in limine; (b) trial memoranda; (c) requested jury instructions (a paper copy and an electronic copy in a format compatible with Word Perfect on a CD-ROM); (d) proposed voir dire questions; (e) exhibit list; (f) exhibits - (copies of each numbered, copy-able exhibit shall be supplied to the court and opposing counsel; original exhibits shall be submitted at the time of trial; both the original and the judge's copies of exhibits shall be three-hole punched and placed into binders with clearly marked index tabs; and all staples and clips shall be removed from the copies of the exhibits which are placed in the three-ring binders); (g) expert witness list and summaries of any expert testimony; (h) verdict form; and (i) the government shall file a complete witness list. (2) Four days prior to trial, by 3:00 p.m., any responses to the above documents shall be filed. NO LATE OR SUPPLEMENTAL FILINGS OF THE ABOVE PRETRIAL DOCUMENTS WILL BE RECEIVED WITHOUT JUST CAUSE SHOWN. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 11/09/2011) |
| 11/10/2011 | 8 | Arrest Warrant Returned Executed on 11/4/11 as to Rashad Q. Sanders. (schm) (Entered: 11/16/2011) |

| 11/14/2011 | 7 | Scheduling Order by Magistrate Judge Dennis J. Hubel as to Rashad Q. Sanders: At defense counsel's request, a review of defendant's detention status is set for **November 17, 2011, at 1:30 p.m.**, before the duty magistrate judge. (kb) (Entered: 11/14/2011) |
| 11/17/2011 | 9 | Motion for Protective Order filed by USA as to Defendant Rashad Q. Sanders. (Attachments: # 1 Proposed Order Protective Order) (Strickland, Kemp) (Entered: 11/17/2011) |
| 11/17/2011 | 10 | **Minutes of Proceedings:** Review of detention status of defendant held before Magistrate Judge Dennis J. Hubel as to Rashad Sanders, at defense counsel's request. Defense witness Marilyn Lindsay sworn and her testimony adduced. Government witness Masayo Halpin sworn and her testimony adduced. ORDER - defendant to remain detained as previously ordered, as both a flight risk and a danger. ORDER: Defendant is prohibited from having any direct or indirect contact with the minor victims in this action, as set forth in the record of the proceedings held in this action on November 4, 2011, and as restated at these proceedings. Kemp Strickland present as counsel for the government. Susan Russell present as counsel for the defendant. Court Reporter: KB/FTR. (kb) (Entered: 11/17/2011) |
| 11/21/2011 | 12 | **ORDER** Granting 9 Motion for Protective Order as to Rashad Q. Sanders (1). Signed on 11/18/2011 by Judge Marco A. Hernandez. See 2-page order attached. (mr) (Entered: 11/21/2011) |
| 12/01/2011 | 13 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Motion Hearing as to Defendant Rashad Q. Sanders for date of November 17, 2011 before Judge Dennis J. Hubel, Transcriber Dennis Apodaca, telephone number (503) 326-8182. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through PACER-See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 12/12/2011. Redaction Request due 12/27/2011. Redacted Transcript Deadline set for 1/6/2012. Release of Transcript Restriction set for 3/5/2012. (Apodaca, Dennis) (Entered: 12/01/2011) |
| 12/12/2011 | 14 | Request for Discovery by Rashad Q. Sanders (Russell, Susan) (Entered: 12/12/2011) |
| 12/14/2011 | 15 | (Ex Parte) Application for Subpoenas and Witness Fees at Government's Expense. Filed by Defendant Rashad Q. Sanders. (mr) (Entered: 12/16/2011) |
| 12/14/2011 | 16 | EX PARTE Order for Issuance of Subpoenas at Government's Expense. Signed by Judge Marco A. Hernandez on 12/14/2011. (mr) (Entered: 12/16/2011) |
| 12/14/2011 | 17 | (Ex Parte) Motion for Order Authorizing Inspection and Copying. Filed by Defendant Rashad Q. Sanders. (mr) (Entered: 12/16/2011) |
| 12/14/2011 | 18 | (Ex Parte) EX PARTE Affidavit of Susan Russell regarding Motion to Inspect 17 filed by Rashad Q. Sanders. (mr) (Entered: 12/16/2011) |
| 12/16/2011 | 19 | EX PARTE Order as to Rashad Q. Sanders regarding Motion to Inspect 17 filed by Rashad Q. Sanders. Signed by Judge Marco A. Hernandez on 12/16/2011. (mr) |

| | | (Entered: 12/19/2011) |
|---|---|---|
| 12/20/2011 | [20] | Motion to Withdraw as Attorney by Susan Russell (*Motion For Withdrawal And Substitution Of Appointed Counsel*) by Defendant Rashad Q. Sanders. (Russell, Susan) (Entered: 12/20/2011) |
| 12/21/2011 | 21 | **Scheduling Order** as to Rashad Q. Sanders regarding Motion to Withdraw as Attorney by Susan Russell and Substitution Of Appointed Counsel [20] . Hearing on motion and status conference is set for 1/10/2012 at 09:00AM in Courtroom 14B before Judge Marco A. Hernandez. The trial date will also remain on calendar for 1/10/2012 at 9:00 a.m. at this time. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 12/21/2011) |
| 12/27/2011 | 22 | **Scheduling Order** as to Rashad Q. Sanders regarding Motion to Withdraw as Attorney by Susan Russell and Substitution Of Appointed Counsel [20] . Hearing on motion and status conference is RESET for 1/10/2012 at **1:00PM** in Courtroom 14B before Judge Marco A. Hernandez. The trial date will also remain on calendar for 1/10/2012 but will trail this hearing. (mr) (Entered: 12/27/2011) |
| 01/10/2012 | 23 | **Minutes of Proceedings:** Motion Hearing/Status Conference/Jury Trial (resetting) before Judge Marco A. Hernandez as to Rashad Q. Sanders held on 1/10/2012 regarding Motion to Withdraw as Attorney by Susan Russell [20] . ORDERS: The motion to withdraw by Ms. Russell is granted and Ms. Russell is relieved. Attorney Mark Cross is appointed by the court. Mr. Cross' oral motion to continue the trial is granted. 3-Day Jury Trial is RESET from 1/10/2012 TO 3/12/2012 at 09:00AM in Courtroom 14B before Judge Marco A. Hernandez. Pursuant to 18 U.S.C. §3161(h)(7)(A) the Court finds the ends of justice outweigh the best interests of the public and the defendant in a speedy trial because the failure to grant the requested continuance is likely to result in a miscarriage of justice (§3161(h)(7)(B)(i) and likely would deny Defendant's counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence (§3161(h)(7)(B)(iv). Thus, excludable delay is granted until 3/12/2012. Amended Trial Management Order to follow. Counsel Present for Plaintiff: AUSA Kemp L. Strickland. Counsel Present for Defendant: FPD Susan A. Russell; Attorney Mark Cross (by telephone). (Court Reporter Jill Erwin) (mr) (Entered: 01/10/2012) |
| 01/10/2012 | 24 | Clerk's Notice of Mailing to Attorney Mark Cross by email regarding Minutes of Proceedings of 1/10/2012. (mr) (Entered: 01/10/2012) |
| 01/10/2012 | 25 | **AMENDED Trial Management Order** as to Rashad Q. Sanders: A 3-DAY JURY TRIAL IS SET FOR **MARCH 12, 2012 AT 9:00 AM**. (1) Fourteen days prior to trial the parties shall simultaneously file: (a) all motions in limine; (b) trial memoranda; (c) requested jury instructions (a paper copy and an electronic copy in a format compatible with Word Perfect on a CD-ROM); (d) proposed voir dire questions; (e) exhibit list; (f) exhibits - (copies of each numbered, copy-able exhibit shall be supplied to the court and opposing counsel; original exhibits shall be submitted at the time of trial; both the original and the judge's copies of exhibits shall be three-hole punched and placed into binders with clearly marked index tabs; and all staples and clips shall be removed from the copies of the exhibits which are placed in the three-ring binders); (g) expert witness list and summaries of any expert testimony; (h) verdict form; and (i) the government |

| | | |
|---|---|---|
| | | shall file a complete witness list. (2) Seven days prior to trial, by noon, any responses to the above documents shall be filed. NO LATE OR SUPPLEMENTAL FILINGS OF THE ABOVE PRETRIAL DOCUMENTS WILL BE RECEIVED WITHOUT JUST CAUSE SHOWN. **PLEASE NOTE: Any rescheduling request of the trial date shall be made in writing at least two weeks prior to the trial date. Within the motion to continue, counsel needs to state if defendant agrees with the request and if opposing counsel agrees. The moving party should contact the other side and state their position within the motion.** If any change in trial date is granted, the timeframes set out in this order shall apply to any new trial date. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 01/10/2012) |
| 01/20/2012 | 26 | Motion to Vacate or Correct Sentence under 28 U.S.C. 2255 filed pro se by Defendant Rashad Q. Sanders. (schm)<br>Civil case 3:12-cv-00126-HZ opened. (Entered: 01/23/2012) |
| 01/20/2012 | 27 | Brief in Support by Rashad Q. Sanders regarding Motion to Vacate or Correct Sentence under 28 U.S.C. 2255 26 filed pro se by Defendant Rashad Q. Sanders (schm) (Entered: 01/23/2012) |
| 01/24/2012 | 28 | Superseding Indictment (Redacted) as to Defendant Rashad Q. Sanders (1); Counts 1s-2s: 18 USC 2423(a) = Transportation of a Minor; Counts 3s-4s: 18 USC 1591(a) and (b)(2), 1594(a) = Sex Trafficking of a Minor. (kw) (Entered: 01/25/2012) |
| 01/24/2012 | 29 | Superseding Indictment Unredacted Version Filed Under Seal as to Defendant Rashad Q. Sanders. (kw) (Entered: 01/25/2012) |
| 01/24/2012 | 30 | Defendant Information Relative to a Criminal Case Sheet; (In accordance with Fed. R. Crim. P. 49.1 this form document containing personal data identifiers is filed under seal) as to Defendant Rashad Q. Sanders. (kw) (Entered: 01/25/2012) |
| 01/26/2012 | 31 | **ORDER:** The Court summarily DENIES Defendant's pro se 28 U.S.C. Sec. 2255 Motion to Vacate 26 on the basis that it is premature as to Rashad Q. Sanders (1). Additionally, no further pro se filings will be accepted absent prior written approval of the Court, as defendant is represented by counsel. The Clerk of the Court shall serve a copy of this order upon all counsel and also directly upon the Defendant. See 2-page order attached. Signed on 1/26/2012 by Judge Marco A. Hernandez. Copy of this order mailed to defendant; all counsel served via ECF. (mr)<br>Civil Case 3:12-cv-00126-HZ closed. (Entered: 01/27/2012) |
| 01/27/2012 | 32 | **Scheduling Order** as to Rashad Q. Sanders. Arraignment on the superseding indictment and status conference is SET for 2/6/2012 at 10:30AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 01/27/2012) |
| 01/27/2012 | 33 | Mail Returned as Undeliverable: Mail sent to Rashad Sanders returned as undeliverable (schm) (Entered: 01/27/2012) |
| 02/06/2012 | 34 | **Minutes of Proceedings:** Status Conference and Arraignment Hearing held on 2/6/2012 before Judge Marco A. Hernandez for Defendant Rashad Q. Sanders (1). Defendant waives reading of Superseding Indictment and advice of rights. Defendant proceeds as named and enters not guilty pleas to all charges contained in the |

| | | |
|---|---|---|
| | | Superseding Indictment. Order that Discovery is due in 14 days. Trial in this matter is RESET from 3/12/2012 to 5/15/2012 at 9:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Defendant waives his right to speedy trial on the record and the court finds, pursuant to 18 U.S.C. §3161(h)(7)(A), that the ends of justice outweigh the best interests of the public and the defendant in a speedy trial because the failure to grant the requested continuance is likely to result in a miscarriage of justice (§3161(h)(7)(B)(i)) and likely would deny Defendant's counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence (§3161(h)(7)(B)(iv). Thus, excludable delay is granted until 5/15/2012. Ordered by Judge Marco A. Hernandez. Counsel Present for Plaintiff: AUSA Kemp L. Strickland. Counsel Present for Defendant: Atty Mark Austin Cross. (Court Reporter Patta Johnson) (mr) (Entered: 02/06/2012) |
| 04/30/2012 | 35 | Second Motion to Continue / Reset by Defendant Rashad Q. Sanders. (Attachments: # 1 Proposed Order) (Cross, Mark) (Entered: 04/30/2012) |
| 05/02/2012 | 36 | Amended Motion to Continue / Reset by Defendant Rashad Q. Sanders. (Attachments: # 1 Attachment Declaration of Counsel, # 2 Proposed Order) (Cross, Mark) (Entered: 05/02/2012) |
| 05/02/2012 | 37 | Amended Motion to Continue / Reset by Defendant Rashad Q. Sanders. (Attachments: # 1 Attachment Declaration of Counsel, # 2 Proposed Order) (Cross, Mark) (Entered: 05/02/2012) |
| 05/03/2012 | 38 | **ORDER:** Finding as Moot 35 AND 36 Motions to Continue / Reset as to Rashad Q. Sanders (1) as those motions were refiled as Motion 37 ; andn Granting 37 Motion to Continue / Reset as to Rashad Q. Sanders (1) as follows: 4-Day Jury Trial is RESET from 5/15/2012 TO 9/18/2012 at 09:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Counsel shall refer to the previously issued Amended Trial Management Order for pretrial submission timelines. Pursuant to 18 U.S.C. §3161(h)(7)(A) the Court finds the ends of justice outweigh the best interests of the public and the defendant in a speedy trial because the failure to grant the requested continuance is likely to result in a miscarriage of justice (§3161(h)(7)(B)(i)) and likely would deny Defendant's counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence (§3161(h)(7)(B)(iv). Thus, excludable delay is granted until 9/18/2012. No further continuances of this matter shall be granted without a status conference with the court. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 05/03/2012) |
| 06/07/2012 | 39 | Second Motion to Appoint Counsel Oral Argument requested. by Defendant Rashad Q. Sanders. (Cross, Mark) (Entered: 06/07/2012) |
| 06/07/2012 | 40 | Declaration of Counsel In Support of Defendant's Motion to Replace Attorney 39 . (Cross, Mark) Document titled and event type modified on 6/11/2012 (mr). (Entered: 06/07/2012) |
| 06/11/2012 | 41 | **Order** regarding Second Motion to Substitute Attorney 40 filed by Defendant Rashad Q. Sanders. The document attached to docket entry 40 is actually a declaration of counsel, not a motion as it is titled. The clerk is directed to correct the title and event type of the docket entry. Ordered by Judge Marco A. Hernandez. (mr) (Entered: |

| | | 06/11/2012) |
|---|---|---|
| 06/11/2012 | [42](#) | Declaration by Mark Austin Cross regarding Second Motion to Appoint Counsel [39](#) filed by Defendant Rashad Q. Sanders (Cross, Mark) (Entered: 06/11/2012) |
| 06/11/2012 | 43 | **Scheduling Order** as to Rashad Q. Sanders (USM #73851-065). Oral Argument on defendant's Second Motion to Replace Counsel [39](#) is set for 6/12/2012 at 11:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 06/11/2012) |
| 06/12/2012 | 44 | **Minutes of Proceedings:** Motion Hearing before Judge Marco A. Hernandez as to Rashad Q. Sanders (USM #73851-065) held on 6/12/2012 regarding Second Motion to Appoint Counsel [39](#) . ORDER: Further hearing is set for 6/14/2012 at 02:00PM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Defendant shall appear in person; Mr. Cross may appear by telephone and shall immediately advise the courtroom deputy of his contact number for that appearance. Counsel Present for Plaintiff: AUSA Kemp L. Strickland. Counsel Present for Defendant: Atty Mark Austin Cross. (Court Reporter Nancy Walker) (mr) (Entered: 06/12/2012) |
| 06/14/2012 | 45 | **Minutes of Proceedings:** Motion Hearing before Judge Marco A. Hernandez as to Rashad Q. Sanders held on 6/14/2012 regarding Second Motion to Appoint Counsel [39](#) . Court has discussion with defendant and defense counsel outside the presence of the Government. Government returns. ORDER: Motion is DENIED; Mr. Petterson is thanked and excused. The trial date of 9/18/2012 is RESET TO 10/30/2012 at 09:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Counsel shall refer to the previously issued Amended Trial Management Order for pretrial submission timelines. Pursuant to 18 U.S.C. §3161(h)(7)(A) the Court finds the ends of justice outweigh the best interests of the public and the defendant in a speedy trial because the failure to grant the requested continuance is likely to result in a miscarriage of justice (§3161(h)(7)(B)(i)) and likely would deny Defendant's counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence (§3161(h)(7)(B)(iv)). Thus, excludable delay is granted until 10/30/2012. Ordered by Judge Marco A. Hernandez. AUSA Kemp Strickland present as counsel for plaintiff(s). Mark Cross and prospective CJA panel attorney Paul Petterson present as counsel for defendant(s). (Court Reporter Nancy Walker.) (mr) (Entered: 06/15/2012) |
| 10/01/2012 | [46](#) | Motion to Withdraw as Attorney by Mark Austin Cross Oral Argument requested. by Defendant Rashad Q. Sanders. (Cross, Mark) (Entered: 10/01/2012) |
| 10/01/2012 | [47](#) | Declaration by Mark Austin Cross regarding Motion to Withdraw as Attorney by Mark Austin Cross [46](#) filed by Defendant Rashad Q. Sanders (Cross, Mark) (Entered: 10/01/2012) |
| 10/03/2012 | 48 | **Scheduling Order** as to Rashad Q. Sanders (USM #73851-065) regarding Motion to Withdraw as Attorney by Mark Austin Cross [46](#) . Motion hearing is set for 10/15/2012 at 10:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 10/03/2012) |
| 10/04/2012 | [49](#) | Unsigned Motion to Substitute Attorney *Mark Austin Cross* Oral Argument requested. by Defendant Rashad Q. Sanders. (Cross, Mark) (Entered: 10/04/2012) |

| 10/15/2012 | 50 | **Minutes of Proceedings:** Hearing on 46 Motion to Withdraw as Attorney and 49 Motion to Substitute Attorney. Judge Marco A. Hernandez presiding. ORDER: Motions are GRANTED - Mark Austin Cross withdrawn from case; Benjamin T. Andersen substituted in for Rashad Q. Sanders replacing Mark Austin Cross. 4-Day Jury Trial is RESET from 10/30/2012 TO 2/19/2013 at 09:00AM (DATE CERTAIN) in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Pretrial is set for 2/14/2012 at 2:00 p.m. in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Counsel shall refer to the previously issued Trial Management Order for pretrial submission timelines. Pursuant to 18 U.S.C. §3161(h)(7)(A) the Court finds the ends of justice outweigh the best interests of the public and the defendant in a speedy trial because the failure to grant the requested continuance is likely to result in a miscarriage of justice (§3161(h)(7)(B)(i)) and likely would deny Defendant's counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence (§3161(h)(7)(B)(iv)). Thus, excludable delay is granted until 2/19/2013. Ordered by Judge Marco A. Hernandez. AUSA Kemp Strickland present as counsel for plaintiff(s). Mark Cross and new CJA panel attorney Benjamin Anderson present as counsel for defendant(s). (Court Reporter Nancy Walker.) (mr) (Entered: 10/15/2012) |
| 10/17/2012 | 51 | **Scheduling Order** as to Rashad Q. Sanders (USM #73851-065). Defendant's Motions, if any, are due by 1/14/2013. Government's Response is due by 1/25/2013. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 10/17/2012) |
| 10/19/2012 | 52 | **ORDER** Granting Substitution of Counsel. IT IS ORDERED that CJA Panel Attorney Benjamin T. Andersen is appointed as substitute counsel pursuant to the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A, relieving CJA Panel Attorney Mark A. Cross for Rashad Q. Sanders, effective October 5, 2012. Signed on 10/19/2012 by Judge Marco A. Hernandez. (mr) (Entered: 10/23/2012) |
| 12/03/2012 | 53 | (Ex Parte) Ex Parte Motion for Subpoenas and Witness Fees at Government's Expense filed by Rashad Q. Sanders as to Defendant Rashad Q. Sanders. (Andersen, Benjamin) (Additional attachment(s) added on 12/3/2012: # 1 Proposed Order) (eo). (Entered: 12/03/2012) |
| 12/04/2012 | 54 | **ORDER** for Issuance of Subpoenas and for Witness Fees at Government Expense as to Rashad Q. Sanders (1). Signed on 12/4/2012 by Judge Marco A. Hernandez. (mr) (Entered: 12/04/2012) |
| 12/28/2012 | 55 | Request for Discovery by Rashad Q. Sanders (Andersen, Benjamin) (Entered: 12/28/2012) |
| 01/14/2013 | 56 | Joint Motion to Continue / Reset *Trial Date* by Defendant Rashad Q. Sanders. (Andersen, Benjamin) (Entered: 01/14/2013) |
| 01/14/2013 | 57 | Declaration by Benjamin Andersen regarding Joint Motion to Continue / Reset *Trial Date* 56 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 01/14/2013) |
| 01/15/2013 | 58 | **ORDER:** On 10/15/2012, this matter was set for a date certain trial; counsel were present at that hearing. Thus, the Motion to Continue / Reset 56 as to Rashad Q. Sanders (USM #73851-065) (1) is DENIED. All the other dates and deadlines as set in |

| | | |
|---|---|---|
| | | the minute order of 10/15/2012 and the scheduling order of 10/17/2012 remain as set. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 01/15/2013) |
| 01/16/2013 | 59 | **Scheduling Order** as to Rashad Q. Sanders (USM #73851-065). At counsel's request, Change of Plea Hearing is SET for 1/22/2013 at 09:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 01/16/2013) |
| 01/22/2013 | 60 | **Minutes of Proceedings:** Entry of Plea Hearing before Judge Marco A. Hernandez for Defendant Rashad Q. Sanders (USM #73851-065). Defendant sworn and examined. Defendant advised of rights. Plea Petition and Plea Agreement signed and accepted by the Court. Government summarized charges and terms of plea agreement. Court finds defendant capable and competent to enter plea. Guilty plea entered as to counts 1, 3 and 4 of the Superseding Indictment. Court finds guilty plea to be knowing and voluntary and accepts defendant's plea. ORDER - Presentence Report to be prepared by U.S. Probation. Defendant shall remain in custody pending sentencing. Sentencing is set for 5/6/2013 at 11:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. The previously-set pretrial date of 2/14/2013 and trial date of 2/19/2013 are hereby stricken.<br><br>The Court will assume 30 minutes is sufficient for sentencing unless the parties notify the Court two weeks in advance that more time will be needed. **Simultaneously filed Sentencing Memos are due no later than WEDNESDAY of week before sentencing by NOON (and by end of day deliver a hard copy to Clerk 's Office Attn: Michelle Rawson, Courtroom Deputy).** If the Sentencing Memos are not received on time, or the Court is not advised that none will be filed, the sentencing may be rescheduled. Counsel Present for Plaintiff: AUSA Kemp L. Strickland. Counsel Present for Defendant: Attorney Benjamin T. Andersen. (Court Reporter Karen Eichhorn) (mr) (Entered: 01/22/2013) |
| 01/22/2013 | 62 | Plea Agreement as to Rashad Q. Sanders. (mr) (Entered: 01/23/2013) |
| 01/22/2013 | 63 | Plea Petition and Order Entering Plea as to Defendant Rashad Q. Sanders signed by Judge Marco A. Hernandez. (mr) (Entered: 01/23/2013) |
| 02/22/2013 | 64 | Motion for Protective Order *Modification of Previously Imposed Protective Order* Oral Argument requested. by Defendant Rashad Q. Sanders. (Andersen, Benjamin) (Entered: 02/22/2013) |
| 02/22/2013 | 65 | Declaration by Benjamin Andersen regarding Motion for Protective Order *Modification of Previously Imposed Protective Order* 64 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 02/22/2013) |
| 02/22/2013 | 66 | Memorandum in Support of Motion by Rashad Q. Sanders regarding Motion for Protective Order *Modification of Previously Imposed Protective Order* 64 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 02/22/2013) |
| 02/22/2013 | 67 | Motion to Withdraw as Attorney by Benjamin Andersen Oral Argument requested. by Defendant Rashad Q. Sanders. (Andersen, Benjamin) (Entered: 02/22/2013) |
| 02/22/2013 | 68 | Declaration by Benjamin Andersen regarding Motion to Withdraw as Attorney by |

| | | Benjamin Andersen 67 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 02/22/2013) |
|---|---|---|
| 02/22/2013 | 69 | Motion to Withdraw Plea of Guilty Oral Argument requested. by Defendant Rashad Q. Sanders. (Andersen, Benjamin) (Entered: 02/22/2013) |
| 02/26/2013 | 70 | **Scheduling Order** as to Rashad Q. Sanders (USM #73851-065) regarding Motion for Protective Order 64 , Motion to Withdraw as Attorney by Benjamin Andersen 67 , and Motion to Withdraw Plea of Guilty 69 . Hearing on the motions is SET for 3/4/2013 at 11:00AM in Judge Hernandez's Courtroom before Judge Marco A. Hernandez. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 02/26/2013) |
| 03/01/2013 | 71 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Change of Plea as to Defendant Rashad Q. Sanders for date of January 22, 2013 before Judge Marco A. Hernandez, Court Reporter Karen EIchhorn, telephone number 503-936-4805. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through PACER-See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 3/11/2013. Redaction Request due 3/25/2013. Redacted Transcript Deadline set for 4/4/2013. Release of Transcript Restriction set for 6/3/2013. (sm) (Entered: 03/01/2013) |
| 03/01/2013 | 72 | Motion to Modify Protective Order, Petition to Dismiss, Withdraw of Counsel, Withdraw of Plea filed pro se by Defendant Rashad Q. Sanders. (schm) (Entered: 03/01/2013) |
| 03/03/2013 | 73 | Memorandum in Support of Motion by Rashad Q. Sanders regarding Motion to Withdraw Plea of Guilty 69 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 03/03/2013) |
| 03/04/2013 | 74 | **Minutes of Proceedings:** Motion Hearing held as to Rashad Q. Sanders (USM #73851-065) before Judge Marco A. Hernandez. ORDER: GRANTING IN PART, DENYING IN PART Motions to Modify Protective Order 64 and 72 as stated on the record. After colloquy with defendant out of present of AUSA, DENYING 67 Motion to Withdraw as Attorney and DENYING defendant's oral motion to proceed pro se. DENYING 69 Motion to Withdraw Plea of Guilty. The sentencing remains as set for 5/6/2013 at 11:00AM in Judge Hernandez's courtroom before Judge Marco A. Hernandez. AUSA Kemp L. Strickland present as counsel for plaintiff(s). Attorney Benjamin T. Andersen present as counsel for defendant(s). (Court Reporter Karen Eichhorn.) (mr) (Entered: 03/04/2013) |
| 04/03/2013 | 75 | Ex Parte Motion for Subpoenas and Witness Fees at Government's Expense filed by Rashad Q. Sanders as to Defendant Rashad Q. Sanders. (Attachments: # 1 Proposed Order) (Andersen, Benjamin) (Entered: 04/03/2013) |
| 04/04/2013 | 76 | **ORDER** Granting 75 Motion for Subpoenas and Witness Fees at Government Expense as to Rashad Q. Sanders (1). Signed on 4/4/2013 by Judge Marco A. Hernandez. (mr) (Entered: 04/04/2013) |
| 04/22/2013 | 77 | Motion to Continue / Reset *Sentencing Date* by Defendant Rashad Q. Sanders. |

| | | (Andersen, Benjamin) (Entered: 04/22/2013) |
|---|---|---|
| 04/22/2013 | 78 | Declaration by Benjamin Andersen regarding Motion to Continue / Reset *Sentencing Date* 77 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 04/22/2013) |
| 04/24/2013 | 79 | Supplemental Declaration by Benjamin Andersen regarding Motion to Continue / Reset *Sentencing Date* 77 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 04/24/2013) |
| 04/25/2013 | 80 | **ORDER** Granting 77 Motion to Continue / Reset as to Rashad Q. Sanders (1) (USM #73851-065). Sentencing is RESET FROM 5/6/2013 TO 5/24/2013 at 09:00AM in Portland Courtroom 14B before Judge Marco A. Hernandez. Counsel has advised the court that this matter may take up to one hour. No further continuances of this date will be considered. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 04/25/2013) |
| 05/03/2013 | 81 | **Scheduling Order** as to Rashad Q. Sanders (USM #73851-065). Due to a conflict in staffing, Sentencing is RESET FROM 5/24/2013 TO 5/22/2013 at 02:00PM in Portland Courtroom 14B before Judge Marco A. Hernandez. The court will allow one hour for this sentencing. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 05/03/2013) |
| 05/15/2013 | 83 | Sentencing Memorandum filed by USA as to Rashad Q. Sanders (Strickland, Kemp) (Entered: 05/15/2013) |
| 05/21/2013 | 84 | Motion to Strike *Surplusage* Oral Argument requested. by Defendant Rashad Q. Sanders. (Andersen, Benjamin) (Entered: 05/21/2013) |
| 05/21/2013 | 85 | Memorandum in Support of Motion by Rashad Q. Sanders regarding Motion to Strike *Surplusage* 84 filed by Defendant Rashad Q. Sanders (Andersen, Benjamin) (Entered: 05/21/2013) |
| 05/22/2013 | 86 | **Scheduling Order** as to Rashad Q. Sanders (USM #73851-065). Due to a scheduling issue with a defense witness, Sentencing is RESET FROM 5/22/2013 TO 6/3/2013 at 02:30PM in Portland Courtroom 14B before Judge Marco A. Hernandez. The court will allow one hour for this sentencing. No further continuances of this matter will be allowed. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 05/22/2013) |
| 05/22/2013 | 87 | **Scheduling Order** as to Rashad Q. Sanders regarding Motion to Strike Surplusage 84 . Motion hearing is SET for 6/3/2013 at 02:30PM (to be heard in conjunction with the sentencing) in Portland Courtroom 14B before Judge Marco A. Hernandez. Ordered by Judge Marco A. Hernandez. (mr) (Entered: 05/22/2013) |
| 06/03/2013 | 88 | **Minutes of Proceedings:** Sentencing and 84 Motion to Strike Surplusage Hearing before Judge Marco A. Hernandez as to Defendant Rashad Q. Sanders (USM #73851-065). ORDER: Motion to Strike Surplusage is DENIED. The court adopts the PSR with modifications as stated on the record. Defendant sentenced; see formal Judgment. Government's motion to dismiss Count 2 is granted and that count is so dismissed. Defendant advised of right to appeal. Defendant requests that the clerk file a notice of appeal on his behalf. Mr. Andersen is relieved; new counsel to be appointed for appeal. AUSA Kemp L. Strickland present as counsel for plaintiff(s). Attorney Benjamin T. Andersen present as counsel for defendant(s). (Court Reporter Nancy Walker.) (mr) |

| | | (Entered: 06/04/2013) |
|---|---|---|
| 06/04/2013 | 89 | JUDGMENT AND COMMITMENT as to Rashad Q. Sanders (1), Count(s) 1-2, 2s, 3, DISMISSED; Count(s) 1s, 3s, 4s, SENTENCING DATE: 6/3/13; IMPRISONMENT: One Hundred Ninety-Four (194) months on Count 1; One Hundred Ninety-Four (194) months on Count 3, to run concurrent with sentence imposed on Count 1 hereof; and One Hundred Ninety-Four (194) months on Count 4, to run concurrently with the sentence imposed on Count 1 hereof; SUPERVISED RELEASE: TEN (10) YEARS; SPECIAL ASSESSMENT: $100.00 for each of Counts 1, 3, and 4. signed on 6/4/13 by Judge Marco A. Hernandez. (schm) (Entered: 06/05/2013) |
| 06/04/2013 | 90 | Statement of Reasons as to Rashad Q. Sanders (**NOTE: This document is filed under seal and access is restricted to counsel of record**) signed on 6/4/13 by Judge Marco A. Hernandez. (schm) (Entered: 06/05/2013) |
| 06/05/2013 | 91 | Notice of Appeal to the USCA for the 9th Circuit by Rashad Q. Sanders. (mr) (Entered: 06/05/2013) |
| 06/10/2013 | | USCA-9th Circuit Case Number as to Rashad Q. Sanders **13-30156** for Notice of Appeal 91 filed by Rashad Q. Sanders. (cp) (Entered: 06/10/2013) |
| 06/14/2013 | 92 | **ORDER APPOINTING COUNSEL** (CJA 20) for Appeal as to Rashad Q. Sanders. IT IS ORDERED that C.J.A. Panel Attorney Robert W. Rainwater is appointed (effective June 12, 2013) as counsel for Rashad Q. Sanders, on the above captioned appeal, pursuant to the provisions of 18 U.S.C. § 3006A. Signed on 6/14/2013 by Judge Marco A. Hernandez. (mr) (Entered: 06/14/2013) |
| 06/24/2013 | 93 | Transcript Designation and Order Form by Rashad Q. Sanders for the hearing held on 6/3/13, 3/4/13, 1/22/13 before Judge Marco A. Hernandez Court Reporter: Nancy Walker regarding Notice of Appeal 91 USCA # 13-30156. Transcript is due by 7/29/2013. (Rainwater, Robert) (Entered: 06/24/2013) |
| 07/15/2013 | 94 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Motion Hearing as to Defendant Rashad Q. Sanders for date of March 4. 2013 before Judge Marco A. Hernandez, Court Reporter Karen M. Eichhorn, telephone number 503-936-4805. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through PACER-See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 7/25/2013. Redaction Request due 8/8/2013. Redacted Transcript Deadline set for 8/19/2013. Release of Transcript Restriction set for 10/18/2013. (sm) (Entered: 07/15/2013) |
| 08/02/2013 | 95 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Sentencing as to Defendant Rashad Q. Sanders for date of June 3, 2013 before Judge Marco A. Hernandez, Court Reporter Nancy M. Walker, telephone number 503-326-8186. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter before the deadline for Release of Transcript Restriction. Afterwards it may be obtained from the Court Reporter (503-326-8186) or through PACER-See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 8/12/2013. Redaction Request due 8/26/2013. Redacted Transcript Deadline set for 9/6/2013. Release of |

Transcript Restriction set for 11/4/2013. (Walker, Nancy) (Entered: 08/02/2013)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/01/2013 15:32:11 | | | |
| **PACER Login:** | cr3930 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cr-00385-HZ Start date: 1/1/1970 End date: 9/3/2013 |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |